# Exhibit A

**COMMONWEALTH OF MASSACHUSETTS**

NORFOLK, ss:

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

Civil Action No.: _2282CV00775_

_8/24/22_
RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

## <u>VERIFIED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF</u>

### INTRODUCTORY STATEMENT

1. This is an action for declaratory and injunctive relief to restrain the arbitrary and unfair decision by the Defendant, Massachusetts Interscholastic Athletic Association, Inc. ("MIAA") to target students who attend statewide public virtual schools in the Commonwealth for exclusion from high school athletics.

2. With no transparency, public participation, or due process whatsoever, MIAA issued a statement in May, 2022 that no virtual school student may apply for or be granted a waiver to participate on their local school sports team, waivers that had been routinely granted historically.

3. Effective July 1, 2022, this arbitrary rule change will prevent the minor child, in whose name this action is brought, from participating in his beloved athletic activities unless he rejects the educational opportunities at his current virtual school that addresses his individual and medical needs.

4. This child is a student at The Education Cooperative Connections Academy ("TECCA"), a statewide online public school in Massachusetts that serves students in grades K-12.

5. Inexplicably, the rule change only targets students who attend a statewide virtual school like TECCA (open to all students in Massachusetts), but not students who attend a districtwide virtual school (open only to students otherwise eligible to enroll in the public schools located in that district).

6. Nearly three years into the COVID-19 crisis, MIAA has singled out the Commonwealth's most vulnerable children and given their families a Hobbesian choice: either take what is best for their education and their health and forfeit the considerable benefit of athletics, or play sports and forego what is best for their academic and often medical needs.

7. This arbitrary and capricious act violates, *inter alia*, the Equal Protection clause of the Fourteenth Amendment to the United States Constitution brought through 42 U.S.C. § 1983, the Massachusetts Constitution, and the Massachusetts Administrative Procedures Act, G.L. c. 30A, §§ 1, *et seq.*

8. Plaintiff Sarah Jones brings this action to provide access for her child now—in particular the Spring season—but she is part of a group that would warrant certification as a class pursuant to Mass. R. Civ. P. 23, which Plaintiffs and others may amend this Verified Complaint later to include.

## PARTIES

9.      Plaintiff Sarah Jones ("Sarah") is an individual and the parent and guardian of her son, the minor child "Jimmy," who is seventeen years old.[1]

10.     Sarah and Jimmy live in Duxbury, Plymouth County, Massachusetts.

11.     MIAA is a private, non-profit corporation with an address of 33 Forge Parkway, Franklin, Norfolk County, Massachusetts.

12.     Notwithstanding its private corporate status, the MIAA is deemed a "state actor" in the Commonwealth of Massachusetts as a matter of law.

## VENUE AND JURISDICTION

13.     This Court has jurisdiction pursuant to G.L. c. 214, § 1 because the Plaintiffs are seeking, *inter alia*, injunctive and declaratory relief.

14.     Venue in this Court is proper pursuant to G.L. c. 223, § 8.

## FACTS

**The Jones Family**

15.     Sarah moved to Duxbury in 1997. A single working mother, she is an account representative handling supply to large public sector and government clients.

16.     Jimmy is seventeen years old. He was born in 2005 in the Russian Federation. Sarah adopted Jimmy when he was eighteen months old. When Sarah adopted him, there were signs that Jimmy had been neglected and/or malnourished as an infant in Russia.

17.     Sarah brought Jimmy into her family and raised him with her other son.

---

[1] To protect the identity of the minor Plaintiff, pseudonyms are used for naming in this action (in conjunction with Plaintiffs' concurrently filed Ex Parte Motion to Proceed Pseudonymously)..

18. Jimmy attended Duxbury public schools through ninth grade at Duxbury High School.

19. Jimmy is a prolific youth hockey player, who plays for a junior league team on Cape Cod that recruits players from around North America. Jimmy's achievements and talent have him in line to be recruited at the highest level of collegiate hockey, and very likely professional hockey as well.

20. Jimmy's club hockey schedule is extraordinarily demanding, and involves considerable travel. Consequently, Jimmy's family determined that Jimmy cannot realistically attend a traditional school schedule.

21. Jimmy enrolled at TECCA in the Fall of 2021.

22. TECCA addresses the two most important objectives in Jimmy's life.

23. First and foremost, TECCA addresses Jimmy's educational needs. Jimmy is an intelligent and motivated student, who also has challenges related to organization and processing likely related to his life as an infant in Russia.

24. Second, TECCA's virtual platform makes Jimmy's hockey dreams possible for the scheduling reasons noted above. It is the key to his future.

25. In addition to hockey, Jimmy started playing lacrosse at Duxbury High School.

26. With an MIAA waiver, Jimmy was able to play junior varsity lacrosse in the Spring of 2022. The Duxbury athletic and academic administrations worked together to apply for the waiver, and it was granted without any controversy or fanfare.

27. Jimmy also learned about the MIAA policy change late this Spring.

4

28. Without restraint of the MIAA policy, Jimmy will not be able to play lacrosse at Duxbury High School next Spring. Club lacrosse is prohibitively expensive and further time consuming, an impossibility for a single working parent like Sarah.

29. Jimmy wants to play lacrosse with his peers, and does not understand why the MIAA would want to stop him.

### TEC Connections Academy Commonwealth Virtual School

30. As noted above, Jimmy is a student at TECCA.

31. TECCA is a State certified public school, approved by the Massachusetts Department of Elementary and Secondary Education ("DESE"), open to students throughout all of Massachusetts.

32. As with any public school, TECCA is (i) subject to Massachusetts' rigorous standards for academic achievement and accountability, (ii) accountable directly to DESE, and (iii) tuition free for all students.

33. TECCA offers an alternative to either home schooling or attendance at a traditional brick-and-mortar school for students that, for a wide variety of reasons, need to attend a virtual school. As examples, children may need to attend because they have found learning in a classroom to be difficult or impossible, because they have suffered bullying in school, their learning disabilities are best suited for online education, or because they are highly advanced students that are otherwise thriving in school, but need the flexibility of a remote learning environment to hone a special ability, such as sports or acting on film and stage.

34. Students with learning disabilities have particularly strong opportunities to thrive at TECCA, as it offers a full array of special educational services, including IEP and Section 504 plans, specifically designed to be offered in a virtual learning environment.

5

35. Because of the virtual nature of education at TECCA, students who wish to participate in sports programs—a well-recognized element and critical part of a child's social development and physical well-being—had for many years played on the local teams in their home districts, meaning the school district in which they live and in which their parents generally pay taxes.

36. By definition as a statewide school, TECCA students live all across the state, so there could never be a TECCA-specific team; it would be a geographic impossibility.

37. Notably, TECCA is a statewide virtual public school, distinct from a single district virtual school, which may be established by an individual school district and provide fully virtual learning opportunities exclusively to students eligible to enroll in that district.

### Massachusetts Interscholastic Athletic Association

38. The MIAA is an association that issues rules for nearly all high school sports teams and competitions in the Commonwealth. The most recent listing on its website claims more than 375 member schools as of earlier this year. TECCA's application for membership with the MIAA is pending.

39. A large majority of the public secondary schools in the Commonwealth are members of MIAA. By virtue of what is in effect a delegation of authority by local school committees under G.L. c. 71, § 47, the MIAA governs and regulates competitive sports among these schools which encompass the vast majority of high school sports programs in Massachusetts.

40. The MIAA's power over high school sports is exceptional, as it sets comprehensive rules and policies that "reach beyond the interscholastic sphere" and influence

6

schools on a more granular level. *See Att'y Gen. v. Mass. Interscholastic Athletic Ass'n*, 378 Mass. 342, 345-46 (1979).

41.    As a result, despite its private incorporation, the courts of this Commonwealth have determined that MIAA qualifies as a state actor for purposes of statutory and constitutional analysis.

42.    Policy statements and rules from the MIAA consequently affect large swaths of school-age children in the Commonwealth, including the majority of all high school students who play (or wish to play) interscholastic sports.

43.    One such policy statement comes in the "MIAA Mission" introductory statement to the current MIAA Handbook (2021-2023), published on the MIAA website with relevant excerpts attached hereto as Exhibit A:

> The mission of the Massachusetts Interscholastic Athletic Association is to serve member schools and the maximum number of their students by providing leadership and support for the conduct of interscholastic athletics which will enrich the educational experiences of all participants. The MIAA will promote activities that provide *lifelong* and *life-quality* learning experiences to students while enhancing their achievement of educational goals.

Exhibit A at 9 (italics in original).

44.    To support that mission, the MIAA Handbook states its philosophy as follows:

> Within high school sport programs, young people learn the values associated with discipline, performing under stress, teamwork, sacrifice, commitment, effort, accountability, citizenship, sportsmanship, confidence, leadership and organizational skills, participating within rules, physical well-being and healthy lifestyles, striving towards excellence, and many other characteristics that come quickly to the mind of any educator....
>
> In the education of approximately 70% of the young people attending MIAA member schools, athletic participation is a critical component. What should drive those responsible for student-athletes and their programs is the educational mission of school activities. For many students, the most stable environment in their lives is that provided by high school activity programs.

7

> Often the best opportunities for crisis intervention, drug prevention, 'day care' programs, and the like are school activity programs. <u>The cost is minimal, while the worth is maximal.</u>

Exhibit A at 10 (emphasis added).

45. While Plaintiffs wholeheartedly support such a mission and philosophy, the MIAA has taken recent actions that have strayed from its stated path and instead work solely to *prohibit* access to athletic participation for an arbitrary class of Massachusetts students, including Plaintiffs.

**MIAA Rules for Participation**

46. To implement its mission and philosophy, the MIAA publishes a set of rules in its handbook that govern, *inter alia*, eligibility to participate in athletic programs.

47. As an eligibility baseline, Rule 51 in the MIAA Handbook states as follows:

> For a student to practice with, or to represent a MIAA member school in athletic competition, the student must be duly enrolled in that school. Additionally, the student must be a candidate for that school's diploma, subject to the jurisdiction of that school's principal (i.e. the principal must have the authority to suspend the student from classes), and under the supervision of that school principal (i.e. the principal must have control and knowledge of the student's daily attendance and achievement).

Exhibit A at 49.

48. Naturally, there are a number of situations in which a student who is not enrolled in a particular school may still wish to join the athletic teams of that school in her home district. Examples would include home schooled students, foreign exchange students, advanced middle school students attending a combined middle-high school, or, relevant here, students attending a virtual public school that cannot feasibly support athletic programs.

8

49. Notably, until recently, all of those categories of examples were provided the means of overcoming the basic eligibility requirements of Rule 51, whether by separate approval processes, or the submission and approval of a waiver from the eligibility restrictions.

50. The MIAA recognizes that students in those non-traditional school environments do not have an alternative means of participating in athletic competitions, which the MIAA itself recognizes as a "critical component" of a student's education.

51. As a result, Rules 52, 53, 54, 55, and 57 describe different ways for such non-traditional students to become eligible and participate in MIAA programs, including by a submitting a simple waiver request on the MIAA's pre-created Form 200.

52. Plaintiffs and other students at TECCA previously filed such Form 200 waiver requests and were granted waivers to play sports in their home districts despite their purported ineligibility under Rule 51 as students not enrolled in such home district schools.

## MIAA's Arbitrary Rule Change

53. For reasons unknown to Plaintiffs and nowhere articulated, the MIAA changed Rule 51, effective July 1, 2022, to specifically exclude all students attending a statewide virtual school from ever participating in MIAA programs, without exception or even the ability to submit a waiver request.

54. Plaintiffs are unaware of MIAA's reasons for the change, as the MIAA has failed to properly provide notice of and open access to its meeting in which such a decision was made, pursuant to the Massachusetts Open Meeting Law (G.L. c. 30A, § 20), or, if no such meeting was required, to follow the notice and publication requirements of the Administrative Procedures Act (G.L. c. 30A, § 3) for adoption of new rules/regulations.

9

55.     The new Rule 51 added the following language to end of the paragraph quoted above, *bolded and italicized* in the reprint of the MIAA Handbook with the revised Rule:

> *Students attending Virtual Schools do not meet any of the above requirements, [sic] therefore are ineligible to participate in interscholastic athletics at MIAA Member Schools. Waivers are not permitted for Rule 51.*

Exhibit A at 49 (emphasis in original).

56.     No change was made to any other Rule regarding non-traditional students (Rule 52 – Alternative, Collaborative, Detached or Other Non-Traditional Educational Programs; Rule 53 – Middle School Students on Senior High Teams; Rule 54 – Home Educated Students; Rule 55 – Membership in School; Rule 57 – Transfer Students).

57.     The MIAA thereafter issued a one-page Rule Clarification, attached as Exhibit B, stating that "A virtual school is a separate educational entity where students dis-enroll from their traditional school and attend a virtual school by CHOICE. This is no different than a student, who is a resident of Milton that chooses to attend Milton Academy. Those students are NOT eligible to participate in interscholastic athletics for Milton High School." Exhibit B (capitalization in original).

58.     As an initial matter, the Rule Clarification is a fundamental misunderstanding of a statewide virtual public school, like TECCA (a tuition-free public school with no sports teams), and a private boarding school, like Milton Academy (which charges more than $50,000 in annual tuition fees and fields dozens of its own sports teams). Students who attend TECCA most often hope to make use of its unique learning environment to help overcome health issues and learning disabilities—students who attend Milton Academy most often do so for its acclaimed reputation as one of the best private schools in the United States.

10

59.     Moving past that wildly inaccurate comparison, the Rule Clarification further states that "Students who are not being educated on the high school campus that will issue their diplomas are not eligible to represent that, or any member high school, unless the criteria within [Rule 51] are satisfied and waiver approved by MIAA." Id.

60.     Ignoring the fact that waivers had been regularly granted to students attending statewide virtual schools for years (prior versions of the MIAA's waiver request form, including approved waivers for TECCA students, even included a checkbox for "Virtual School" as a reason for submitting the waiver request), the Rule Clarification determined that:

> *Students attending Virtual Schools do not meet any of the eligibility standards that are required of their teammates, therefore a waiver as outlined in Rule 52 is not an option.* Principals, athletic directors, and guidance personnel should counsel students regarding athletic eligibility prior to committing to non-traditional educational pursuits. **Effective July 1, 2022, waivers are not permitted for those students choosing to attend Virtual Schools that have no affiliation to an MIAA member school. These students are ineligible to participate in MIAA interscholastic athletics.**

Id. (emphasis in original).

61.     Specifically limiting the prohibition on waivers to students choosing to attend "Virtual Schools that have no affiliation to an MIAA member school" was the MIAA's mechanism for separating statewide virtual schools from district virtual schools—if a school district is an MIAA member, its single district virtual school students *are* eligible for a waiver, while *all* statewide virtual school student are banned. Statewide virtual schools are not administered by their local school committee, rather, statewide virtual schools have their own independent administration and staff.

62.     Neither the revised Rule 51 nor the Rule Clarification gives any hint of a reason as to why the prior practice of providing waivers should now be discontinued, or why the

11

restriction on waivers is *only* applicable to students attending statewide virtual schools and not any other non-traditional student applying for a waiver.

63. The revised Rule 51 is directly contradictory to the MIAA's stated goal of helping more students have access to the undeniable benefits of athletic competition. Rather than providing this "critical component" to more students' educations, the MIAA is restricting access. The MIAA has failed to articulate a legitimate reason or otherwise state the justification for its new position on the participation of students attending statewide virtual schools.

64. Indeed, no such justification could exist, as virtual school attendees, including Jimmy, have successfully obtained waivers and participated as athletes for their home districts for years without incident.

65. The MIAA's actions are exceptionally harmful to students attending statewide virtual schools, including Jimmy, while providing no discernible benefit to the MIAA or any of its member schools. To borrow yet another phrase from the MIAA Handbook, to allow the handful of annual statewide virtual school attendees to play, "the cost is minimal, while the worth is maximal."

66. Further, not only is the revised Rule unnecessarily harmful to statewide virtual school students, but it denies them any possibility of exception or waiver, prohibiting even the submission of a waiver request.

67. The MIAA's arbitrary actions single out the class of students at virtual schools and deprive them of the right or privilege to participate in such programs, or even to apply for the ability to do so.

12

68. The MIAA has given no rationale for why this class of students should be treated any differently from students enrolled in a traditional high school experience or any students enrolled in virtual schools administered through a single district.

69. Confirming the arbitrary and capricious nature of the decision is who MIAA did not target.

70. Students attending district virtual schools may still obtain waivers while students attending TECCA and other state approved virtual schools now may not. There are single district virtual schools in Springfield, Attleboro, Brockton, Chelsea, Peabody, Pittsfield, Westfield, and Worcester.

71. Home school students, who do not operate under the supervision of their high school principal or any school administration, may still obtain waivers as TECCA and other state approved virtual schools now may not.

72. To be clear, both students attending district virtual schools and home school students deserve to play high school sports. But Jimmy and his peers at TECCA do *not* deserve to be excluded for no reason at all. No defensible reason exists for this discrimination.

## COUNT I
### EQUAL PROTECTION VIOLATION – UNITED STATES CONSTITUTION
### FOURTEENTH AMENDMENT AND 42 U.S.C. § 1983

73. Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

74. The equal protection clause of the Fourteenth Amendment to the United States Constitution mandates that "No State shall...deny to any person within its jurisdiction the equal protection of the laws."

75. The purpose of the Equal Protection Clause is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether by the express terms

13

of a statute or by its improper execution through duly constituted agents. Equal protection requires that persons similarly situated must be treated alike with respect to a legitimate governmental purpose.

76.     As recognized by Massachusetts courts on multiple occasions, Defendant MIAA is an entity that acts under color of state law when it administers its athletic programs for Massachusetts children.

77.     MIAA Rule 51 explicitly and intentionally prohibits any student enrolled in a Massachusetts virtual school from participating in MIAA interscholastic athletic activities, or even seeking a waiver of that blanket restriction.

78.     As a state actor, Defendant MIAA's institution of the policy in MIAA Rule 51 created two classes out of the pool of students who otherwise are identical in that they: attend Massachusetts public schools, live in the same home school district, have parents who pay taxes in that same home school district, and wish to play the same sport after school.

79.     One class of students has all of those shared characteristics and attends the physical or virtual public school located in their home school district; the other class has all of those shared characteristics and attends a statewide virtual public school.

80.     The difference between the two classes is that those who attend the district public schools are permitted by the MIAA to play the desired sports, while those who attend the statewide virtual public school are not.

81.     For example, Jimmy lives in Duxbury, but attends virtual public school at TECCA and is therefore prohibited from even applying to play sports in their home school districts. By contrast, a student who is home schooled in the same town, or a student who attends

14

a district virtual school, would be able to play. That unjust and unequal treatment is the very definition of discrimination.

82. Defendant MIAA gives no justification for this arbitrary treatment of otherwise similarly situated students, nor does it justify its basis for withholding the sole means of seeking a remedy—the waiver request.

83. No other group of students who would otherwise fall outside of the traditional educational system (such as homeschooled students) is subject to a blanket prohibition on even *applying* for a waiver—the first step in obtaining further administrative or judicial review of an arbitrary denial.

84. The egregious procedural irregularities at play in singling out and extinguishing the rights of students attending *some* virtual schools are appalling. Such a decision smacks of impropriety, and abuse of power by a state actor.

85. In wrongfully singling out and punishing students for their attendance at *some* virtual schools, the MIAA has intentionally created an arbitrary second-class citizenry among Massachusetts public school students, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

86. The MIAA's actions therefore deprive Plaintiffs and *some* virtual school students of their "rights, privileges, or immunities secured by the Constitution" in violation of 42 U.S.C. § 1983.

87. Plaintiffs seek preliminary and permanent injunctions prohibiting the MIAA from enforcing MIAA Rule 51 or in any other way discriminating against students that attend a statewide public virtual school and wish to continue to play sports in their home school district.

15

## COUNT II
### DECLARATORY JUDGMENT – G.L. c. 231A, §§ 1-2 AND G.L. c. 30A, §§1 *ET SEQ.*

88. Plaintiffs hereby incorporate the preceding paragraphs by reference as though fully set forth herein.

89. Pursuant to the Massachusetts Administrative Procedures Act, G.L. c. 30A, § 3, prior to the adoption of any regulation in Massachusetts, the adopting agency "shall give notice and afford interested persons an opportunity to present data, views, or arguments."

90. Such notice must be provided at least twenty-one days prior to the proposed action, by multiple means, including, *inter alia*, publication in newspapers and professional publications and by filing a copy of such notice with the secretary of state.

91. As recognized by Massachusetts courts on multiple occasions, Defendant MIAA is an entity that acts under color of state law when it administers its athletic programs for Massachusetts children.

92. The adoption of Rule 51 therefore qualified as the adoption of a regulation governed by G.L. c. 30A, § 3.

93. MIAA failed to follow any of the requisite notice procedures required by G.L. c. 30A, § 3 for the adoption of a regulation.

94. Any regulation adopted in violation of G.L. c. 30A, § 3 has been invalidly enacted and is without force or effect.

95. G.L. c. 30A, § 7 permits judicial review of any regulation through an action for declaratory relief as provided in G.L. c. 231A.

96. Plaintiffs have a right to declaratory relief because there is an actual controversy between the Parties, the Plaintiffs have standing, all necessary parties have been joined, and there are no further administrative exhaustion requirements.

16

97. It is therefore appropriate and just for this Court to declare:

    a. The MIAA is a *de facto* agency as defined in G.L. c. 30A, § 1(2) by virtue of the delegation to it of school committee authority under G.L. c. 71, § 47 by the vast majority of the school districts in Massachusetts and its statewide control over interscholastic sports.

    b. The MIAA is therefore required to comply with the notice requirements set forth in G.L. c. 30A, § 3 (or § 2 as appropriate) prior to the adoption of any regulations it proposes.

    c. Rules in the MIAA Handbook are regulations as defined in G.L. c. 30A, § 1(5).

    d. The MIAA failed to abide by the notice procedures required as a prerequisite to the adoption of MIAA Rule 51.

    e. MIAA Rule 51 was therefore invalidly enacted and is without force or effect.

    f. The MIAA is prohibited from enforcing MIAA Rule 51.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs ask this Court to enter judgment in their favor and against Defendant, and to:

A. Enter a preliminary injunction enjoining MIAA from enforcing the change to MIAA Rule 51 prohibiting the granting of waivers to students attending statewide virtual schools, so that Jimmy is allowed to participate in extracurricular sports activities in his home school district in the coming academic year that begins September 1, 2022;

B. Enter a preliminary injunction enjoining MIAA from prohibiting students enrolled in statewide virtual schools from participating in athletic programs in their home districts, solely on the basis that such students are enrolled in statewide virtual schools;

C. Issue a declaratory judgment and permanent injunctive relief in the forms set forth above;

D. Award Plaintiffs their costs and attorneys' fees as permitted by statute; and

E. Award such other relief as is fair and just.

17

**Plaintiffs demand a trial by jury on all issues so triable.**

Dated: August 24, 2022

Respectfully submitted,

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

By their attorneys,

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell (BBO #657950)
*nodonnell@sullivanlaw.com*
Patrick P. Dinardo (BBO# 125250)
*pdinardo@sullivanlaw.com*
Ryan M. Rosenblatt (BBO# 698490)
*rrosenblatt@sullivanlaw.com*
Anna Lea Setz (*pro hac vice forthcoming*)
*asetz@sullivanlaw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

18

## <u>VERIFICATION</u>

I, SARAH JONES, hereby state that I am personally familiar with the facts and circumstances giving rise to this Verified Complaint, that I have read this Verified Complaint, and that the facts stated in the Verified Complaint are true to my own knowledge, except those facts stated as to information and belief, and as to those facts, that I believe them to be true.

Signed under the penalties of perjury this 23rd day of August, 2022.

*/s/ Sarah Jones*
SARAH JONES, as guardian, parent, next
friend of minor child "Jimmy"

# Exhibit A

**Excerpts of MIAA Handbook Reprint (2021-2023)**

*July 1, 2021 — June 30, 2023*



MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION

# Rules and Regulations Governing Athletics

## A Handbook for Principals and Athletic Directors

**Non-Discrimination Statement:** MIAA does not discriminate in its educational programs or activities on the basis of race, color, national or ethnic origin, ancestry, age, religion or religious creed, disability or handicap, sex or gender, gender identity and/or expression, sexual orientation, military or veteran status, genetic information, or any other characteristic protected under applicable federal, state or local law. Retaliation is also prohibited.

1

## RULE CHANGES PASSED FOR THE 7/1/21 - 6/30/23 HANDBOOK

| Rule # | Change |
|--------|--------|
| I | Membership of Game Officials Committee models sport committee makeup. |
| 3 | Will require adult representation at all varsity soccer games (not just boys' varsity soccer). |
| 34 | Added boys 7 v 7 field hockey as a recognized MIAA Fall Sport. |
| 34 | Increase the maximum number of weekly wrestling competitions from 2 to 3. |
| 35 | Allows Fall Golf season to begin on 3rd Friday preceding Labor Day (same as football). |
| 45 | First offense for a Bona Fide Team violation has been changed to 1 game suspension. |
| 51 | Removed "Student Eligibility" from title as waivers are no longer permitted for this rule. |
| 57 | A fully executed copy of Form 200 must be submitted by the receiving school to the MIAA in all transfer cases. |
| 66.3 | Basketball - Removed rule 66.3 that stated "the ten-second back court does not apply to the girls game." |
| 66.3 | Basketball - Removed the words "or dribble" from NFHS Basketball Rule 9-10-1-a which states, *"A player must not, while closely guarded, in his/her frontcourt, hold the ball for five seconds* ~~or dribble the ball for five seconds.~~*"* |
| 66.7 | Basketball - Increases the daily individual participation limit from 4 quarters to 6 quarters. |
| 66.10 | Basketball - The shot clock will reset to 15 seconds when there is an intentionally kicked or fisted ball with 14 seconds or less left in the possession. If the violation occurs with 15 or more seconds on the shot clock, no reset will take place and the offense will have the remaining time left in the possession. |
| 69.6 | Football – Prohibited Field Equipment |
| 69.2 | ~~Football - For all varsity football games, each team must employ a licensed physician, licensed athletic trainer or certified EMT to be with their~~ team. MIAA BOD voted to delay implementation for 1 year. Will be required starting with Fall 2022 season. |
| 72.18 | Ice Hockey – New Rule allows leagues the option to play 17-minute periods. |
| 72.5 | Ice Hockey – rule change adopts a new detailed overtime procedure. |
| 79.3 | Softball – eliminated Rule 79.3 to be in compliance with the NFHS pitching rules. |
| 83.1.5 | Volleyball - Rosters are not required to be submitted to the game officials. |
| 84.4.8 | Wrestling – eliminates morning weigh-ins and added new growth allowance. |
| 87 | Student Eligibility Waiver – The Process: Multiple changes to the waiver process and Accountability section added. Only one level of appeal, not two (ERB and MIAC). |

## MIAA MISSION

The mission of the Massachusetts Interscholastic Athletic Association is to serve member schools and the maximum number of their students by providing leadership and support for the conduct of interscholastic athletics which will enrich the educational experiences of all participants. The MIAA will promote activities that provide *lifelong* and *life-quality* learning experiences to students while enhancing their achievement of educational goals.



## *MIAA PHILOSOPHY*

Within high school sport programs, young people learn the values associated with discipline, performing under stress, teamwork, sacrifice, commitment, effort, accountability, citizenship, sportsmanship, confidence, leadership and organizational skills, participating within rules, physical well-being and healthy lifestyles, striving towards excellence, and many other characteristics that come quickly to the mind of any educator. If interscholastic athletics are to be justified as school activities, then values such as these must be the priorities of every program. Ethics, playing within the spirit of the rules, and good sportsmanship (which is good citizenship) must be woven into the fabric of the high school athletic program.

In the education of approximately 70% of the young people attending MIAA member schools, athletic participation is a critical component. What should drive those responsible for student-athletes and their programs is the educational mission of school activities. For many students, the most stable environment in their lives is that provided by high school activity programs. Often the best opportunities for crisis intervention, drug prevention, "day care" programs, and the like are school activity programs. The cost is minimal, while the worth is maximal.

While winning contests, rather than losing them, is a laudable goal, it should not supersede the primary priorities of high school sport programs. What should be the rationale behind high school activities is preparing students to succeed rather than merely to win games. Win or lose, students should learn lessons of a lasting and positive nature.

If the success of any high school athletic program is measured by an undefeated season, then 99% of the thousands of high school teams, which participate annually in Massachusetts, have failed. If a league championship is the measure of success, then 85% of our programs are failures. Even if success is measured merely by qualification for MIAA end-of-season tournaments, then 50% of our students are "losers."

What should be encouraged is participation in varied activities under different teacher/coach role models. The percentage of student-athletes who complete their formal athletic experiences at the high school level is overwhelming (well in excess of 90%). Schools should focus their attention upon goals other than championships or the development of "blue chip" athletes. Young people need varied activities: time at the beach, time to study and, in fact, time just to be kids.

Young people need to learn, to think, and simply to grow up. Schools should guide them, through athletics, to allow that to happen as comfortably as possible.

10

## *WORTH REMEMBERING*

- The MIAA is an organization of public and private high schools.

- MIAA approves and sponsors athletic activities in 35 sports involving more than 230,000 student-athletes who compete in approximately 100,000 competitions annually.

- Governance and administration of MIAA is shared among members of the Massachusetts Association of School Committees, Massachusetts Association of School Superintendents, high school administrators, athletic directors, coaches, game officials, and licensed physicians; all of whom serve without compensation on thirty-five MIAA standing committees.

- MIAA Educational Athletic programs are at the cutting edge of national efforts in these critically important areas to young people.

- High school activity programs are an integral part of the total education process. Successful interscholastic athletic programs teach young people values such as:

| | |
|---|---|
| Accepting success graciously | Physical well-being and Chemical Health |
| Accountability | Respect |
| Citizenship and Sportsmanship | Responsibility |
| Confidence | Sacrificing for the common good |
| Handling disappointment | Self-discipline |
| Leadership skills | Social skills |
| Organizational skills | Striving towards excellence |
| Participating within rules | Taking instruction |
| Performing under pressure | Teamwork |
| Persistence | Work ethic |

- Grade point averages (GPA) of students improve during seasons in which they are participating in athletics.

- Approximately 70% of all students are participants in MIAA interscholastic athletic programs.

- Student-athletes have higher attendance and graduation rates than non-athletes.

- 95% of corporate officers report that they had participated in high school athletics.

- High school athletic programs are cost effective. They typically make up one to three percent of the local school budget.

- High school activity programs often represent the best drop-out prevention, crisis intervention, day care, and drug prevention programs which a community can offer, and the cost per student is minimal.

- Students participate in high school athletics because they want to! This motivation should be utilized to teach "life lessons."

- School activities are "the other half of education" and "an extension of the classroom." Athletic programs have no justification within a school if the young people participating are not learning how to "win in life." Contests won or lost are not nearly as important as the life lessons learned by the student participants.

49.11.2      Any third and subsequent coach contest disqualification (over coaching career) will result in the school principal, athletic director and coach being required to meet with the MIAA Sportsmanship Committee on the coach's eligibility.

49.12      In addition to being in violation of Massachusetts General Laws, hazing is a most flagrant example of lack of respect for both self and others. Massachusetts General Law Chapter 269, section 17-19 was enacted in 1988. The law requires that secondary schools provide all school groups (e.g. athletic teams) a copy of the law. Click here to access the "hazing law".

49.13      Any student-athlete who is disqualified (see Rule 49.3) from any interscholastic contest must complete the National Federation Sportsmanship on-line course – "Sportsmanship", before reestablishing eligibility. This course is free.

## 50.    Coach/Media Relations

50.1      It is important that communication between coaches and the media reflects and promotes high standards of sportsmanship, integrity and ethics.

       50.1.1      Coaches must not publicly criticize any game official, or permit anyone under their supervision to criticize game officials.

       50.1.2      Coaches should cooperate with the media in the interpretation and clarification of rules and/or other aspects of the game, but not make critical comments about specific decisions of game officials.

       50.1.3      Coaches must make an effort, in their communication with the media, to stress positive displays of sportsmanship demonstrated by the student-athletes, coaches, fans, spectators, and the schools involved in the competition.

50.2      Any coach found in non-compliance with the above will be subject to penalties determined by the Committee on Sportsmanship, Integrity, and Ethics.

## 51.    Baseline Eligibility Requirements

For a student to practice with, or to represent a MIAA member school in athletic competition, the student must be duly enrolled in that school. Additionally, the student must be a candidate for that school's diploma, subject to the jurisdiction of that school's principal (i.e. the principal must have the authority to suspend the student from classes), and under the supervision of that school principal (i.e. the principal must have control and knowledge of the student's daily attendance and achievement). *Students attending Virtual Schools do not meet any of the above requirements, therefore are ineligible to participate in interscholastic athletics at MIAA Member Schools. Waivers are not permitted for Rule 51.*

Ultimately the interpretation and application of Association rules rests with the MIAA executive director/staff and the Board of Directors. Principals (or athletic directors) must contact the Association executive staff to resolve any possible eligibility issues before permitting a student to represent your school. This rule complements Rule 52, 53, 54 and 55.

51.1     An ineligible student who is duly enrolled in your school, may practice with team if approved by your school administration.

## 52.     Student Eligibility: Alternative, Collaborative, Detached or Other Non-Traditional Educational Programs

Students who are not being educated on the high school campus that will issue their diplomas are not eligible to represent that, or any member high school, unless the criteria within this rule are satisfied and waiver approved by MIAA. If the student is not eligible at the attending college or the alternative institution does not offer any athletic participation opportunity, a student may participate in the diploma-granting MIAA high school if that principal:

- has the authority to suspend the student from all academic programs; and
- receives daily reports of the student's attendance and achievement; and
- Certifies the student is eligible by all other MIAA and local standards that must be satisfied by the student's teammates.

(The above conditions must be agreed to in writing via MIAA Rule 52 Letter of Agreement from Fillable Forms by the non-member-school director prior to any practice or athletic participation by the student at the high school that is awarding the diploma.)

These non-traditional students may not participate if they do not meet all of the eligibility standards that are required of their teammates and waiver is approved by MIAA. Principals, athletic directors, and guidance personnel should counsel students regarding athletic eligibility prior to committing to non-traditional educational pursuits.

## 53.     Student Eligibility: Middle School Students on Senior High Teams

A middle school student is eligible to represent a senior high school on its athletic teams only when the MIAA member high school includes those grades and they are under the direct "jurisdiction" and "supervision" of the high school principal (see Rule 51 for definitions).

## 54.     Student Eligibility: Home Educated Students

A home-educated student is eligible to participate in interscholastic athletics if the following conditions are met:

The local school committee of a MIAA public school member institution has adopted a policy regarding participation of home educated students on the high school teams, and the local building principal has indicated such on the annual MIAA membership form while including all home schoolers in the MIAA enrollment report.

The Educational Plan for the home-educated student has been approved by the public school Superintendent or designee.

The Principal has determined appropriate high school grade level placement (9-12) for each home educated student in conjunction with chronological age and educational plan.

The student resides in the school district that serves the high school, and is living with their parents or legal guardians in the family residence. In multiple school districts, a home-educated student must be assigned to the school of record in the same manner as other students.

The Principal is satisfied that the student meets the standards for athletic participation required for all other students as defined in the current MIAA Handbook. This includes, but is not limited to, those rules governing transfers, academic eligibility, age requirements, and the number of consecutive seasons of athletic eligibility beyond grade eight.

MIAA requirements relative to academic eligibility must be certified by the Principal at the same times that all other student-athletes are to be certified as academically eligible.

If the Principal determines that all eligibility standards detailed above have been met, the Principal may declare the student eligible to participate in interscholastic competition. The rights, privileges, and responsibilities associated with all other student-athletes attending MIAA member schools will apply to home educated students who have satisfied the requirements above.

## 55. Student Eligibility: Membership in School

55.1    A student shall have been a member of the MIAA member secondary school for a minimum of two months (exclusive of the Summer vacation) and have been issued a report card preceding the contest, unless entering from an elementary or junior high school at the start of the school year or transfers in from another school. Attendance at school does not start when student registers in that school, but rather when student begins attending classes.

55.2    When a student drops out of school and then decides later to return to the same school, student cannot become eligible for athletics until a report card has been issued and until the expiration of a minimum of two calendar months from the date of student's return to the same school.

55.3    Except as may be otherwise specified by statute or state regulation, a student must be a resident of and domiciled in a municipality which normally contributes student population to the school.

## 56. Student Eligibility/School Requirements: Physical Examinations/Medical Coverage/Concussions

56.1    All students must pass a physical examination prior to participation in High School Athletics. A physical exam covers the student for 13 months from the exam date. A student's eligibility will terminate once a physical has reached the 13 month limit.

Physical examinations must be performed by a duly registered Licensed Physician, Physician Assistant or Nurse Practitioner. The Sports Medicine Committee recommended physical examination form is in MIAA Members Only Fillable Forms.

56.1.1    All MIAA member school coaches (paid or volunteer) are required to take annually the on-line National Federation Concussion Course, or other MA

51

Department of Public Health recognized education program, prior to the start of their season. MIAA Board of Directors' policy effective November 29, 2010.

56.1.2 All MIAA member school Athletic Directors and Athletic Trainers are required to take annually the on-line National Federation Concussion Course, or other recognized education program, prior to the start of their season. MIAA Board of Directors' policy effective March 21, 2011.

56.1.3 All students are required to take the on-line National Federation Concussion Course or other MA Department of Public Health recognized education program following regulations as put forth by the <u>Department of Public Health in regards to the Concussion Law.</u>

PENALTY: A student in violation shall be suspended for the number of contests in which they participated without a proper physical. Teams do not have to forfeit these contests.

56.2 Each school's medical person/staff is responsible for the members of that team. These individuals annually must have taken, and been certified in, the NFHS on-line Concussion Course (click here) or other recognized education program. In the event of injury, that medical person/staff will make the final judgment as to whether a student-athlete may return to play (please see Rule 56.4 below regarding concussions). Whenever a medical person is on duty at an athletic event, they shall be responsible for both teams (unless the other team has its own medical person present). When a physician is not present at an athletic event, a licensed/certified athletic trainer, if available, shall be considered the higher medical authority on-site when an EMS is providing medical coverage at the same event. Their judgment will be final. Physical disqualification by the medical provider renders the student ineligible. The Penalty for playing an ineligible student is forfeiture.

56.3 Medical Alert Bracelets/Anklets are approved for wearing in all sports, provided they are taped to the body and marked in red.

56.4 Any student-athlete who exhibits signs, symptoms or behaviors consistent with a concussion (such as loss of consciousness, headache, dizziness, confusion, or balance problems) shall be immediately removed from the practice or competition and must not return to practice or competition that day, and further shall not return to play until cleared (in writing to the Athletic Director) by an appropriate health-care professional (as determined by the Department of Public Health). Whenever it is decided to disqualify a student-athlete from further participation for a suspected concussion or other injury, the person making that decision must communicate about this matter with the injured athlete's coach and athletic director in a timely fashion.

**57. Student Eligibility: Transfer Students**

Rules 57.1 through 57.5 deal with school transfers that were not required due to the move of parents or transfers without the move of parents.

57.1 A student who transfers from any school to an MIAA member high school is ineligible to participate in any interscholastic athletic contest at any level for a period of one year

in all sports in which that student participated at the varsity level or its equivalent during the one year period immediately preceding the transfer. (see exemptions listed in Rule 57.7) For the purpose of this rule, no transfer will be deemed to have taken place if a student returns to former school on or before the eleventh school day from the date of last attendance there providing student did not try-out for any athletic team at the new school. However, Form 200 must always be satisfactorily executed upon the students return if transfer was between two MIAA Member Schools *and then the fully executed Form 200 must be sent to the MIAA Office by the receiving school.*

57.2   "Varsity participation" is defined as any appearance, as a competitor, in a varsity inter-school contest other than a scrimmage. The "equivalent" will be judged by the MIAA executive staff on the basis of the quality of non-school sport program participation.

57.3   Before a transfer student can be certified as eligible in a specific sport within the year of the transfer, the sending MIAA school principal and athletic director must certify on Form 200 by signature what the student participated in – sport & level (sub varsity, varsity or non-school team) during the year prior to the actual transfer. Only MIAA Member Schools – Receiving and Sending – are allowed to use Form 200. *A copy of the fully executed Form 200 must be sent to the MIAA Office by the receiving school.*

   57.3.1   If it is later determined that the sending school falsely or erroneously certified eligibility, then the sending school will be subject to minimally a letter of censure, copies of which will be mailed to the school committee, superintendent, principal, athletic director, and reported on the MIAA website.

   57.3.2   MIAA Form 200 must be dated and filed at the receiving school before the student is declared eligible (as to the transfer rule only) by the receiving school principal. Note that Form 200 will not yield eligibility for a student who transfers after the opening date of that practice season (57.5). *A copy of the fully executed Form 200 must be sent to the MIAA Office by the receiving school.*

57.4   The receiving MIAA High School Principal may utilize Form 200 to declare a transfer student eligible, providing transfer is prior to the start of the season and if the sending MIAA School Principal certifies the following (3a through 3f on Form 200):
   a. To our knowledge recruitment was not involved in any way.
   b. At the time of transfer, the student was in good standing.
   c. The student would be academically eligible at the sending school.
   d. To our knowledge the transfer was in no way motivated by athletics.
   e. The student would have been eligible by MIAA and local rules at the sending school.
   f. If sending school believes recruitment, or transfer was related to athletic (a & d above), they must make an allegation with additional proof(s) to the MIAA Executive Director or designee within 10 days of returning the Form 200 to the Receiving School. They must also NOT INITIAL "a" or "d" when filling out Form 200.

53

**57.5** A student who transfers after the start of that practice season is ineligible in all sports during that sport season.

**57.6** Foreign Students

**57.6.1** A student who transfers from a foreign country without parental change of residence accompanying the transfer will be ineligible unless such transfer is sponsored by a CSIET (Council on Standards for International Education Travel) approved foreign exchange program. Students who enter a member school under a CSIET approved program may be declared immediately eligible for athletic participation by the building principal as long as all other MIAA eligibility standards are met and it is not a direct placement. If a direct placement, according to CSIET Standard 6b, a waiver is necessary. A CSIET student who has graduated from a secondary school in their own country will be exempt from the MIAA graduation rule (#61) if that student has not completed thirteen (13) years (including kindergarten) – or twelve (12) years (not including kindergarten) – of formal education.

**57.6.2** Foreign athletes who are not in this country under the auspices of a CSIET approved program or attending a MIAA member school as the direct result of the change in residence of the parents, shall not be eligible for interscholastic athletics regardless of the length of stay in this Country.

**57.6.2.1** Schools must request a waiver of eligibility of rule 57.6 for these non-CSIET student-athletes to participate. If waiver is approved, approval is until student-athlete graduates or withdraws from that school, providing they continue to meet all other eligibility standards.

**57.7** Exemptions to the transfer rule – a transfer student may be eligible immediately provided all other eligibility requirements are met:

**57.7.1** Change of residence of a student's parents: A student's transfer is necessitated by a change of residence of their parent(s) to the area served by the school to which student transfers. The academic standard of the receiving school will determine eligibility. Therefore, in such transfer cases, academic ineligibility is not portable. (This exception does not apply to a change in custody, guardianship, or to a student's change in residence from one parent to another, nor does it apply when the student could continue to attend the former school.)

**57.7.2** Middle school transfer: A student who enters the ninth grade of a four-year high school and who has not been enrolled previously in the ninth grade.

**57.7.3** Elementary/Middle School graduate: A student who has completed the last grade available in the school previously attended.

54

57.7.4    Closed school: If a school no longer exists, a student may be eligible at the school of their choice immediately after the closing of that school.

## 58.    Student Eligibility: Academic Requirements



58.1    A student must secure during the last marking period preceding the contest (e.g. second quarter marks and not semester grades determine third quarter eligibility) a passing grade, and full credit, in the equivalent of four traditional year-long major English courses.   A transfer student may not gain academic eligibility if student was not, or would not be, eligible at the sending school, unless transfer was necessitated by a move of parents and then eligibility would be determined by receiving schools eligibility standards (see Rule 57.7.1).

58.2    A student cannot at any time represent a school unless that student is taking courses which would provide Carnegie Units equivalent to four traditional year-long major English courses.

58.3    To be eligible for the fall marking period, students are required to have passed and received full credits for the previous academic year the equivalent of four traditional year-long major English courses.

58.4    Academic eligibility of all students shall be considered as official and determined on the published date when the report cards for that ranking period are to be issued to the parents of all students within a particular class.

58.4.1    Senior student-athlete academic eligibility following the third-quarter report cards being issued, will carry through to the conclusion of the spring sport season. Fourth quarter grades can't then render a senior academically eligible.

Note:  The MIAA academic eligibility standards are designed to ensure that a student is fully enrolled in school and actively engaged in academic life on a consistent basis throughout the school year.  When utilizing a 4 x 4 block schedule, a student must pass at least two of the four required 'major' courses (or equivalent) in each academic marking period.

The questions you must ask in determining equivalency are:

*How many minutes per day/week/semester does this course meet?

*How many credits toward graduation as approved in advance by school committee policy will be offered for this course?

*Is this equivalent to past academic requirements?

(If further clarification is necessary, principals and athletic directors are encouraged to contact a member of the MIAA executive staff.)

# Exhibit B

**MIAA Rule Clarification**
**Virtual Schools – Rule 51 and 52**



# MIAA Rule Clarification
# Virtual Schools – Rule 51 and 52

Ultimately the interpretation and application of Association rules rests with the MIAA executive director/staff and the Board of Directors. On May 10, 2022, the Executive Director reiterated his interpretation regarding the eligibility and participation of students attending virtual schools. This interpretation was supported by the MIAA Board of Directors. The purpose of this notification is to communicate to the membership clarity regarding virtual schools.

A virtual school is a separate educational entity where students dis-enroll from their traditional school and attend a virtual school by CHOICE. This is no different than a student, who is a resident of Milton that chooses to attend Milton Academy. Those students are NOT eligible to participate in interscholastic athletics for Milton High School.

As outlined in MIAA Rule 51, "For a student to practice with, or to represent a MIAA member school in athletic competition, the student must be duly enrolled in that school. Additionally, the student must be a candidate for that school's diploma, subject to the jurisdiction of that school's principal (i.e. the principal must have the authority to suspend the student from classes), and under the supervision of that school's principal (i.e. the principal must have control and knowledge of the student's daily attendance and achievement)."

***Students attending Virtual Schools do not meet the requirements outlined in Rule 51, therefore are ineligible to participate in athletics at MIAA Member Schools.***

Students who are not being educated on the high school campus that will issue their diplomas are not eligible to represent that, or any member high school, unless the criteria within this rule are satisfied and waiver approved by MIAA.

*Students attending Virtual Schools do not meet any of the eligibility standards that are required of their teammates, therefore a waiver as outlined in Rule 52 is **not an option.***

Principals, athletic directors, and guidance personnel should counsel students regarding athletic eligibility prior to committing to non-traditional educational pursuits.

**Effective July 1, 2022, waivers are not permitted for those students choosing to attend Virtual Schools that have no affiliation to an MIAA member school. These students are ineligible to participate in MIAA interscholastic athletics.**



MIAA | 33 Forge Pkwy | Franklin, MA 02038 | 508-541-7997

| CIVIL ACTION COVER SHEET | DOCKET NUMBER<br>2282CV00775 | Trial Court of Massachusetts<br>The Superior Court | |
|---|---|---|---|
| | | COUNTY | Norfolk |

| | | | |
|---|---|---|---|
| **Plaintiff** | Sarah JONES, as guardian, parent, and next | **Defendant:** | MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION |
| **ADDRESS:** | friend of her minor child "Jimmy" | **ADDRESS:** | 33 Forge Parkway |
| | | | Franklin, Massachusetts 02038 |
| | | | |
| **Plaintiff Attorney:** | Nicholas O'Donnell | **Defendant Attorney:** | |
| **ADDRESS:** | SULLIVAN & WORCESTER LLP | **ADDRESS:** | |
| | One Post Office Square | | |
| | Boston, MA 02109 | | |
| **BBO:** | BBO #125250 | **BBO:** | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| D03 | Injunction | F | [X] YES   [ ] NO |

*If "Other" please describe:

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| [ ] YES   [X] NO | [ ] YES   [X] NO |

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

#### TORT CLAIMS

A. Documented medical expenses to date

    1. Total hospital expenses _____

    2. Total doctor expenses _____

    3. Total chiropractic expenses _____

    4. Total physical therapy expenses _____

    5. Total other expenses (describe below) _____

      Subtotal (1-5): **$0.00**

B. Documented lost wages and compensation to date _____

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____

F. Other documented items of damages (describe below)

      TOTAL (A-F): **$0.00**

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

#### CONTRACT CLAIMS

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| | | |
|---|---|---|
| Signature of Attorney/Unrepresented Plaintiff: X   /s/ *Nicholas M. O'Donnell* | | Date: 8/24/2022 |

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

#### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| | | |
|---|---|---|
| Signature of Attorney/Unrepresented Plaintiff: X   /s/ *Nicholas M. O'Donnell* | | Date: 8/24/2022 |

Nicholas M. O'Donnell (BBO #657950)

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

---

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION,

Defendant.

---

Civil Action No.: 2282CV00775

8/24/2022 Motion is allowed as to all prejudgment Service of Process by Lynne Dewsnap and her agents at Dewsnap & Associates.

(Cannone. J)

att: ReDeane Gusto
Ass't Clerk

## MOTION FOR SPECIAL PROCESS SERVER

Plaintiff Sarah Jones ("Sarah"), as guardian, parent, and next friend of her minor child "Jimmy" (Sarah and Jimmy, together the "Plaintiffs"), by their undersigned attorneys, pursuant to Mass. R. Civ. P. 4, move for appointment of Lynn Dewsnap and her agents at Dewsnap & Associates, LLC at 92 State St., 8th Floor, Boston, MA 02109, to serve the Complaint and such other process as it may be necessary to serve in the above-captioned matter. Lynn Dewsnap and her agents are all over 18 years of age and Dewsnap & Associates, LLC is a disinterested party.

Dated: August 24, 2022

Respectfully submitted,

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

By their attorneys,

/s/ Nicholas M. O'Donnell
Nicholas M. O'Donnell (BBO #657950)
nodonnell@sullivanlaw.com
Patrick P. Dinardo (BBO# 125250)
pdinardo@sullivanlaw.com
Ryan M. Rosenblatt (BBO# 698490)
rrosenblatt@sullivanlaw.com
Anna Lea Setz (pro hac vice forthcoming)
asetz@sullivanlaw.com
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that on or about August 24, 2022, this document was served on Defendant by hand as part of the service of process.

/s/ Nicholas M. O'Donnell
Nicholas M. O'Donnell

2

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION,

Defendant.

Civil Action No.: 2282CV00775

## PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Sarah Jones[1] ("Sarah"), as guardian, parent, and next friend of her minor child "Jimmy" (Sarah and Jimmy, together the "Plaintiffs"), by their undersigned attorneys, move this Court pursuant to Mass. R. Civ. P. 65 for an order against Defendant, Massachusetts Interscholastic Athletic Association, Inc. ("MIAA") to preliminarily enjoin and restrain MIAA's enforcement of its Rule 51, which arbitrarily and discriminatorily prohibits Jimmy (and students like him) from participating in interscholastic athletics.

The MIAA, as a state actor, amended its Rule 51 to discriminatorily prohibit all students attending a statewide virtual public school created pursuant to G.L. c. 47, § 94 from participating in its statewide interscholastic athletic activities and competitions. Students attending statewide virtual schools, including Jimmy, had been granted waivers by the MIAA year after year to

---

[1] To protect the identity of the minor Plaintiff, pseudonyms are used for naming in this action (in conjunction with Plaintiffs' concurrently filed Ex Parte Motion to Proceed Pseudonymously).

participate on the teams of their home school districts, despite their enrollment in statewide virtual public schools. Suddenly, without justification or compliance with the Massachusetts Administrative Procedures Act (G.L. c. 30A, § 3), the MIAA amended Rule 51 to specifically exclude all students attending statewide virtual public schools from its program *and* to deprive all such students of the ability to seek a waiver to the rule (as had been the historical approach for such students). Not only did the MIAA target all students at statewide virtual public schools, but they did so in a way that still permitted students attending *districtwide* virtual public schools (and all other non-traditional students) to participate in their programs. This narrow attack on the class of students attending statewide virtual public schools, including Jimmy, serves no rational state interest, and is a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and G.L. c. 30A, § 3.

Plaintiffs seek preliminary injunctive relief to restore the status quo and prohibit the MIAA from enforcing its arbitrary and discriminatory Rule 51, which, if left unchecked, would bar Jimmy from continuing to participate on his high school lacrosse team despite no discernable change in circumstances. Such injunctive relief would prevent irreparable harm to Jimmy, who stands to lose invaluable growth and development experiences with each day he is left off the lacrosse team. As a result of the MIAA's actions, Plaintiffs are being forced to make a terrible choice: what is best for Jimmy's education, or his love of (and benefit from) continuing to play lacrosse with his peers. Without injunctive relief, Jimmy will be forced to miss lacrosse tryouts, risking exclusion from the team for the entire season, and taking a heavy toll on his mental health.

Neither the MIAA nor any public interest will suffer from a return to the status quo of granting waivers to Jimmy and other students at statewide virtual public schools. The balance of

2

the harms must fall in Plaintiffs' favor. Indeed, the public interest of allowing public school students to enjoy the social, physical, and mental benefits of participating in organized sports strongly supports enjoining the MIAA from enforcing Rule 51.

In support of this motion, Plaintiffs rely upon and incorporate herein by reference the following documents: (i) the Verified Complaint filed in this action; (ii) the Memorandum of Law in Support of this Motion; (iii) the Affidavit of Robert Maguire; and (iv) the Affidavit of Patrick Lattuca, Ph.D.

## SECURITY

Pursuant to Mass. R. Civ. P. 65(c), Plaintiffs seek a finding of good cause shown to waive the requirement of giving security in any amount prior to the issuance of any preliminary injunction. Minor Plaintiff Jimmy is a high school student trying to continue to play sports with his peers. Plaintiffs are not seeking any monetary damages in their Verified Complaint, nor does the issuance of a preliminary injunction preserving the status quo serve to harm the MIAA in any way. Even if the preliminary injunction is later dissolved for any reason, the MIAA will be in exactly the same position it is now, obviating the need for the posting of any security.

## COMPLIANCE WITH SUPERIOR COURT RULE 9A AND 9C

This is an emergency motion pursuant to Superior Court Rule 9A(d)(1), excusing compliance with the general requirements of Superior Court Rules 9A(b) and 9C. I certify that on August 23, 2022, I telephoned Bob Baldwin, the Executive Director for the MIAA (who is not, so far as I know, represented by counsel) in an effort to narrow or avoid the need for this motion. I was unable to reach Mr. Baldwin. I left a detailed voicemail as to the reason for my call and the urgency of our request given the impending start of the school year. As of the time of this

filing, I had not spoken with Mr. Baldwin or any representatives for MIAA. I believe that the MIAA opposes this emergency motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a preliminary injunction in substantially the form attached hereto as Exhibit A.

Dated:  August 24, 2022

Respectfully submitted,

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

By their attorneys,

*/s/ Nicholas M. O'Donnell*
Nicholas M. O'Donnell (BBO #657950)
*nodonnell@sullivanlaw.com*
Patrick P. Dinardo (BBO# 125250)
*pdinardo@sullivanlaw.com*
Ryan M. Rosenblatt (BBO# 698490)
*rrosenblatt@sullivanlaw.com*
Anna Lea Setz (*pro hac vice forthcoming*)
*asetz@sullivanlaw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA  02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that on or about August 24, 2022, this document was served on Defendant by hand as part of the service of process.

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell

# Exhibit A

## Proposed Order

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

Civil Action No.: 2282CV00775

## [PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

Upon the emergency motion ("Motion") of the Plaintiffs in this action, supported by a memorandum of law, affidavits, and Verified Complaint, and after an opportunity for briefing from the Defendant and a hearing haven taken place on _____ ___, 2022, the Court hereby **GRANTS** the Motion and **ENJOINS** the Defendant until the resolution of this action or a further Order of this Court from (i) enforcing MIAA's change to Rule 51 (as effective July 1, 2022) prohibiting the granting of waivers to students attending statewide virtual public schools, so that Plaintiffs are allowed to participate in extracurricular sports activities in their home school districts in the coming academic year, (ii) prohibiting students enrolled in statewide virtual public schools from participating in athletic programs in their home districts, solely on the basis that such students are enrolled in virtual schools, and (iii) altering, amending, or adopting any further MIAA rules without proper compliance with G.L. c. 30A, § 3.

The Court finds good cause shown that obviates the need for any security pursuant to Mass. R. Civ. P. 65(c). The Plaintiffs are therefore excused from providing any form of security.

SO ORDERED:

_____

Justice of the Superior Court

Dated: _____

8/24/22. ORDER OF NOTICE TO ISSUE ON PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF, PRAYERS A-C OF VERIFIED COMPLAINT, RETURNABLE ON 9/7/22 @ 2:30 P.M. (IN PERSON). WILSON, J.

ATTEST: STEVEN T. MAASE ASST. CLERK

8/24/22
RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

4.0

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

---

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION,

Defendant.

Civil Action No.: 2282CV00775

---

### PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Sarah Jones[1] ("Sarah"), as guardian, parent, and next friend of her minor child "Jimmy" (Sarah and Jimmy, together the "Plaintiffs"), by their undersigned attorneys, move this Court pursuant to Mass. R. Civ. P. 65 for an order against Defendant, Massachusetts Interscholastic Athletic Association, Inc. ("MIAA") to preliminarily enjoin and restrain MIAA's enforcement of its Rule 51, which arbitrarily and discriminatorily prohibits Jimmy (and students like him) from participating in interscholastic athletics.

The MIAA, as a state actor, amended its Rule 51 to discriminatorily prohibit all students attending a statewide virtual public school created pursuant to G.L. c. 47, § 94 from participating in its statewide interscholastic athletic activities and competitions. Students attending statewide virtual schools, including Jimmy, had been granted waivers by the MIAA year after year to

---

[1] To protect the identity of the minor Plaintiff, pseudonyms are used for naming in this action (in conjunction with Plaintiffs' concurrently filed Ex Parte Motion to Proceed Pseudonymously).

participate on the teams of their home school districts, despite their enrollment in statewide virtual public schools. Suddenly, without justification or compliance with the Massachusetts Administrative Procedures Act (G.L. c. 30A, § 3), the MIAA amended Rule 51 to specifically exclude all students attending statewide virtual public schools from its program *and* to deprive all such students of the ability to seek a waiver to the rule (as had been the historical approach for such students). Not only did the MIAA target all students at statewide virtual public schools, but they did so in a way that still permitted students attending *districtwide* virtual public schools (and all other non-traditional students) to participate in their programs. This narrow attack on the class of students attending statewide virtual public schools, including Jimmy, serves no rational state interest, and is a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and G.L. c. 30A, § 3.

Plaintiffs seek preliminary injunctive relief to restore the status quo and prohibit the MIAA from enforcing its arbitrary and discriminatory Rule 51, which, if left unchecked, would bar Jimmy from continuing to participate on his high school lacrosse team despite no discernable change in circumstances. Such injunctive relief would prevent irreparable harm to Jimmy, who stands to lose invaluable growth and development experiences with each day he is left off the lacrosse team. As a result of the MIAA's actions, Plaintiffs are being forced to make a terrible choice: what is best for Jimmy's education, or his love of (and benefit from) continuing to play lacrosse with his peers. Without injunctive relief, Jimmy will be forced to miss lacrosse tryouts, risking exclusion from the team for the entire season, and taking a heavy toll on his mental health.

Neither the MIAA nor any public interest will suffer from a return to the status quo of granting waivers to Jimmy and other students at statewide virtual public schools. The balance of

2

the harms must fall in Plaintiffs' favor. Indeed, the public interest of allowing public school students to enjoy the social, physical, and mental benefits of participating in organized sports strongly supports enjoining the MIAA from enforcing Rule 51.

In support of this motion, Plaintiffs rely upon and incorporate herein by reference the following documents: (i) the Verified Complaint filed in this action; (ii) the Memorandum of Law in Support of this Motion; (iii) the Affidavit of Robert Maguire; and (iv) the Affidavit of Patrick Lattuca, Ph.D.

## SECURITY

Pursuant to Mass. R. Civ. P. 65(c), Plaintiffs seek a finding of good cause shown to waive the requirement of giving security in any amount prior to the issuance of any preliminary injunction. Minor Plaintiff Jimmy is a high school student trying to continue to play sports with his peers. Plaintiffs are not seeking any monetary damages in their Verified Complaint, nor does the issuance of a preliminary injunction preserving the status quo serve to harm the MIAA in any way. Even if the preliminary injunction is later dissolved for any reason, the MIAA will be in exactly the same position it is now, obviating the need for the posting of any security.

## COMPLIANCE WITH SUPERIOR COURT RULE 9A AND 9C

This is an emergency motion pursuant to Superior Court Rule 9A(d)(1), excusing compliance with the general requirements of Superior Court Rules 9A(b) and 9C. I certify that on August 23, 2022, I telephoned Bob Baldwin, the Executive Director for the MIAA (who is not, so far as I know, represented by counsel) in an effort to narrow or avoid the need for this motion. I was unable to reach Mr. Baldwin. I left a detailed voicemail as to the reason for my call and the urgency of our request given the impending start of the school year. As of the time of this

3

filing, I had not spoken with Mr. Baldwin or any representatives for MIAA. I believe that the MIAA opposes this emergency motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a preliminary injunction in substantially the form attached hereto as Exhibit A.

Dated: August 24, 2022

Respectfully submitted,

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

By their attorneys,

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell (BBO #657950)
*nodonnell@sullivanlaw.com*
Patrick P. Dinardo (BBO# 125250)
*pdinardo@sullivanlaw.com*
Ryan M. Rosenblatt (BBO# 698490)
*rrosenblatt@sullivanlaw.com*
Anna Lea Setz (*pro hac vice forthcoming*)
*asetz@sullivanlaw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that on or about August 24, 2022, this document was served on Defendant by hand as part of the service of process.

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell

# Exhibit A

## Proposed Order

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

Civil Action No.: _____

## [PROPOSED] ORDER GRANTING PRELIMINARY INJUNCTION

Upon the emergency motion ("Motion") of the Plaintiffs in this action, supported by a

memorandum of law, affidavits, and Verified Complaint, and after an opportunity for briefing

from the Defendant and a hearing haven taken place on _____, 2022, the Court

hereby **GRANTS** the Motion and **ENJOINS** the Defendant until the resolution of this action or

a further Order of this Court from (i) enforcing MIAA's change to Rule 51 (as effective July 1,

2022) prohibiting the granting of waivers to students attending statewide virtual public schools,

so that Plaintiffs are allowed to participate in extracurricular sports activities in their home

school districts in the coming academic year, (ii) prohibiting students enrolled in statewide

virtual public schools from participating in athletic programs in their home districts, solely on the

basis that such students are enrolled in virtual schools, and (iii) altering, amending, or adopting

any further MIAA rules without proper compliance with G.L. c. 30A, § 3.

The Court finds good cause shown that obviates the need for any security pursuant to

Mass. R. Civ. P. 65(c). The Plaintiffs are therefore excused from providing any form of security.

SO ORDERED:

_____

Justice of the Superior Court

Dated: _____

2

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION,

Defendant.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Civil Action No.: 2282CV00995

8/24/22
RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

## EX PARTE MOTION FOR SHORT ORDER OF NOTICE

Plaintiff Sarah Jones ("Sarah"), as guardian, parent, and next friend of her minor child "Jimmy" (Sarah and Jimmy, together the "Plaintiffs"), by their undersigned attorneys, move the Court ex parte pursuant to Superior Court Rule 9A(d)(1) and Mass. R. Civ. P. 65 to issue a short order of notice and schedule an expedited hearing on Plaintiffs' Emergency Motion for Preliminary Injunction filed herewith. In support of their motion, Plaintiffs state the following:

1.      Plaintiffs have filed a Verified Complaint against the Defendant, Massachusetts Interscholastic Athletic Association, Inc. ("MIAA"), alleging violations of, *inter alia*, the Equal Protection clause of the Fourteenth Amendment to the United States Constitution and G.L. c. 30A, § 3.

2.      Plaintiffs seek preliminary injunctive relief to restore the status quo and prohibit the MIAA from enforcing its arbitrary and discriminatory Rule 51, which, if left unchecked, would bar minor Plaintiff Jimmy from continuing to participate on his high school sports team despite no discernable change in circumstances.

3.      In support of their motion, Plaintiffs have filed herewith a Verified Complaint, an Emergency Motion for a Preliminary Injunction, and a Memorandum in Support of Plaintiffs' Emergency Motion for a Preliminary Injunction.

WHEREFORE, Plaintiffs respectfully request that the Court enter a short order of notice, schedule a hearing for Plaintiffs' Emergency Motion for Preliminary Injunction on or before September 2, 2022, or the earliest date and time that is convenient for the Court, and order such other and further relief that the Court deems just and proper.

Dated:  August 24, 2022

Respectfully submitted,

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

By their attorneys,

/s/ Nicholas M. O'Donnell
Nicholas M. O'Donnell (BBO #657950)
nodonnell@sullivanlaw.com
Patrick P. Dinardo (BBO# 125250)
pdinardo@sullivanlaw.com
Ryan M. Rosenblatt (BBO# 698490)
rrosenblatt@sullivanlaw.com
Anna Lea Setz (pro hac vice forthcoming)
asetz@sullivanlaw.com
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA  02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

2

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that within three (3) days of a ruling on the above ex parte motion, this document will be served on Defendant with a copy of such ruling as required by Superior Court Rule 9A(d)(1).

/s/ Nicholas M. O'Donnell
Nicholas M. O'Donnell

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

               Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

               Defendant.

Civil Action No.: 2282CV00775

## PLAINTIFFS' EX PARTE MOTION TO PROCEED PSEUDONYMOUSLY

Plaintiff Sarah Jones ("Sarah"), as guardian, parent, and next friend of her minor child

"Jimmy" (Sarah and Jimmy, together the "Plaintiffs"), by their undersigned attorneys, hereby

move the Court pursuant to the Massachusetts Rules on Impoundment Procedure, to enter an Ex

Parte Order to proceed pseudonymously.[1] In support thereof, this case involves the interests of

minor child Jimmy and the facts of this case involve references to the minor's highly confidential

health information including mental health information and learning disability diagnoses. To

further protect the identity of the minor, Jimmy's parent must also proceed pseudonymously to

avoid any connection to the minor by way of his parent's name. Courts in Massachusetts

routinely allow plaintiffs in similar circumstances to proceed pseudonymously. *See Doe v.*

*Superintendent of Schools of Worcester*, 421 Mass. 117 (Mass. 1995) (plaintiff minor allowed to

---

[1] This Motion should be read in conjunction with the concurrently filed (i) Ex Parte Motion to Impound the Affidavit of Jimmy, and for Entry of a Protective Order Concerning Plaintiffs' Identities, and (ii) Affidavit of Jimmy.

proceed pseudonymously to protect identity in challenging expulsion for carrying knife to school); *Doe ex rel. Doe v. Yunits,* 15 Mass. L. Rptr. 278, (Mass. Super. 2001) (plaintiff minor allowed to proceed pseudonymously to protect identity in challenging school dress code application to those diagnosed with gender identity disorder). Accordingly, Plaintiffs respectfully request that this Court enter an order:

1.      Permitting Plaintiffs to file the accompanying Complaint and case-initiating documents in this litigation using the pseudonyms in the above-referenced caption; and

2.      Directing that all documents filed in this action, and all judgments, orders, decisions, notices and any other documents relating to the action, including those filed by the Court or the Clerk, refer to Plaintiffs by the pseudonyms in the above-referenced caption.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order in the form of the attached proposed order providing for the relief requested herein.

Dated:  August 24, 2022                  Respectfully submitted,

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

By their attorneys,

*/s/ Nicholas M. O'Donnell*
Nicholas M. O'Donnell (BBO #657950)
*nodonnell@sullivanlaw.com*
Patrick P. Dinardo (BBO# 125250)
*pdinardo@sullivanlaw.com*
Ryan M. Rosenblatt (BBO# 698490)
*rrosenblatt@sullivanlaw.com*
Anna Lea Setz (*pro hac vice forthcoming*)
*asetz@sullivanlaw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA  02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that within three (3) days of a ruling on the above ex parte motion, this document will be served on Defendant with a copy of such ruling as required by Superior Court Rule 9A(d)(1).

*/s/ Nicholas M. O'Donnell*
Nicholas M. O'Donnell

**COMMONWEALTH OF MASSACHUSETTS**

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

Plaintiffs,

Civil Action No.: _____

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

## [PROPOSED] ORDER ON EX PARTE MOTION TO PROCEED PSEUDONYMOUSLY

This matter having come before the Court upon an Ex Parte Motion to Proceed
Pseudonymously, and the Plaintiffs having shown good cause for such an order to impound
sensitive identifying information of minors, it is hereby ORDERED as follows:

THE COURT ORDERS THAT:

1. Plaintiffs are permitted to file their Complaint and case-initiating documents in
   this litigation using the pseudonyms in the above-referenced caption;

2. All subsequent documents filed in this action, and all judgments, orders,
   decisions, notices and any other documents relating to the action, including those
   filed by the Court or the Clerk, shall refer to Plaintiffs by the pseudonyms in the
   above-referenced caption; and

3. Such pseudonyms shall remain in use and effect until further Order of this Court.

SO ORDERED:

_____

Justice of the Superior Court

Dated: _____

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

---

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

              Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

              Defendant.

Civil Action No.: 2282-CV00775

*5/24/2022 Allowed in part as a temporary order in effect until further hearing before this Court (Wilson, J.) currently scheduled for September 7, 2022.*

*Leighton, J.*

---

## PLAINTIFFS' EX PARTE MOTION TO PROCEED PSEUDONYMOUSLY

Plaintiff Sarah Jones ("Sarah"), as guardian, parent, and next friend of her minor child "Jimmy" (Sarah and Jimmy, together the "Plaintiffs"), by their undersigned attorneys, hereby move the Court pursuant to the Massachusetts Rules on Impoundment Procedure, to enter an Ex Parte Order to proceed pseudonymously.[1] In support thereof, this case involves the interests of minor child Jimmy and the facts of this case involve references to the minor's highly confidential health information including mental health information and learning disability diagnoses. To further protect the identity of the minor, Jimmy's parent must also proceed pseudonymously to avoid any connection to the minor by way of his parent's name. Courts in Massachusetts routinely allow plaintiffs in similar circumstances to proceed pseudonymously. *See Doe v. Superintendent of Schools of Worcester*, 421 Mass. 117 (Mass. 1995) (plaintiff minor allowed to

---

[1] This Motion should be read in conjunction with the concurrently filed (i) Ex Parte Motion to Impound the Affidavit of Jimmy, and for Entry of a Protective Order Concerning Plaintiffs' Identities, and (ii) Affidavit of Jimmy.

proceed pseudonymously to protect identity in challenging expulsion for carrying knife to school); *Doe ex rel. Doe v. Yunits,* 15 Mass. L. Rptr. 278, (Mass. Super. 2001) (plaintiff minor allowed to proceed pseudonymously to protect identity in challenging school dress code application to those diagnosed with gender identity disorder). Accordingly, Plaintiffs respectfully request that this Court enter an order:

1. Permitting Plaintiffs to file the accompanying Complaint and case-initiating documents in this litigation using the pseudonyms in the above-referenced caption; and

2. Directing that all documents filed in this action, and all judgments, orders, decisions, notices and any other documents relating to the action, including those filed by the Court or the Clerk, refer to Plaintiffs by the pseudonyms in the above-referenced caption.

WHEREFORE, Plaintiffs respectfully request that this Court enter an order in the form of the attached proposed order providing for the relief requested herein.

Dated: August 24, 2022

Respectfully submitted,

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

By their attorneys,

*/s/ Nicholas M. O'Donnell*
Nicholas M. O'Donnell (BBO #657950)
*nodonnell@sullivanlaw.com*
Patrick P. Dinardo (BBO# 125250)
*pdinardo@sullivanlaw.com*
Ryan M. Rosenblatt (BBO# 698490)
*rrosenblatt@sullivanlaw.com*
Anna Lea Setz (*pro hac vice forthcoming*)
*asetz@sullivanlaw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that within three (3) days of a ruling on the above ex parte motion, this document will be served on Defendant with a copy of such ruling as required by Superior Court Rule 9A(d)(1).

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell

**COMMONWEALTH OF MASSACHUSETTS**

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

Plaintiffs,

Civil Action No.: _____

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

## [PROPOSED] ORDER ON EX PARTE MOTION TO PROCEED PSEUDONYMOUSLY

This matter having come before the Court upon an Ex Parte Motion to Proceed

Pseudonymously, and the Plaintiffs having shown good cause for such an order to impound

sensitive identifying information of minors, it is hereby ORDERED as follows:

THE COURT ORDERS THAT:

1.    Plaintiffs are permitted to file their Complaint and case-initiating documents in

this litigation using the pseudonyms in the above-referenced caption;

2.    All subsequent documents filed in this action, and all judgments, orders,

decisions, notices and any other documents relating to the action, including those

filed by the Court or the Clerk, shall refer to Plaintiffs by the pseudonyms in the

above-referenced caption; and

3.    Such pseudonyms shall remain in use and effect until further Order of this Court.

SO ORDERED:

_____

Justice of the Superior Court

Dated: _____

8/24/22

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION,

Defendant.

Civil Action No.: 2282CV 00775

8/24/2022 Allowed in part as follows: Pursuant to Rule 3 of the Uniform Rules of Impoundment Procedure, which governs ex parte Impoundment, and based upon my finding that immediate and irreparable injury may result before a party or interested non-party can be heard in opposition, the Court orders impoundment of the minor Plaintiff's affidavit until further hearing before this Court (Wilson, J) currently scheduled for September 7, 2022. Otherwise, the motion is Denied.

Leighton, J.

## EX PARTE MOTION TO IMPOUND THE AFFIDAVIT OF MINOR PLAINTIFF JIMMY, AND FOR ENTRY OF A PROTECTIVE ORDER CONCERNING PLAINTIFFS' IDENTITIES

Plaintiff Sarah Jones ("Sarah"), as guardian, parent, and next friend of her minor child "Jimmy" (Sarah and Jimmy, together the "Plaintiffs"), by their undersigned attorneys, hereby move the Court ex parte pursuant to the Massachusetts Rules on Impoundment Procedure, to enter an Ex Parte Order to impound the Affidavit of Jimmy, as well as a Protective Order prohibiting the disclosure of the identities of the parties involved in the dispute.[1] In support thereof, this case involves the interests of minor child Jimmy and the facts of this case involve references to the minor's highly confidential health information including mental health information and learning disability diagnoses. To further protect the identity of the minor, Jimmy's parent must also proceed pseudonymously to avoid any connection to the minor by way

---

[1] This Motion should be read in conjunction with the concurrently filed Ex Parte Motion to Proceed Pseudonymously and the Affidavit of Jimmy.

1

of his parent's name, and the Defendant must be ordered to refrain from publicly identifying any of the parties to this litigation for so long as the sought-after protective order exists.

Courts in Massachusetts routinely allow plaintiffs in similar circumstances to proceed pseudonymously. *See Doe v. Superintendent of Schools of Worcester*, 421 Mass. 117 (Mass. 1995) (plaintiff minor allowed to proceed pseudonymously to protect identity in challenging expulsion for carrying knife to school); *Doe ex rel. Doe v. Yunits,* 15 Mass. L. Rptr. 278, (Mass. Super. 2001) (plaintiff minor allowed to proceed pseudonymously to protect identity in challenging school dress code application to those diagnosed with "gender identity disorder"). Such pseudonyms must be made a requirement of the opposing parties as well, or the protections granted to the moving party will be serve no purpose.

Likewise, a party may request that certain parts of the case be impounded to preserve their protected privacy rights and confidentiality. It is "[t]hrough the balancing test that a judge makes the determination of 'good cause.'" *H.S. Gere & Sons, Inc. v. Frey*, 400 Mass. 326, 329 (1987). To determine whether good cause is shown, a judge must balance the rights of the parties based on the particular facts of each case, and take into account all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reason for the request. *New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business in Suffolk County*, 462 Mass. 76, 83 (2012).

In this case, the parties should be allowed to proceed pseudonymously and have the affidavits filed herewith be impounded. Further, the Court should enter a protective order that extends the pseudonymous naming scheme to the Defendant's filings, and prohibits the Defendant from identifying the Plaintiffs to third-parties outside of this action. This case is being

brought on behalf of a minor whose medical diagnoses and learning abilities are discussed in detail that should not be publicly available, whose disclosure would serve no interest, and whose impoundment does not prejudice Defendant. Having such information become public knowledge may be traumatic and developmentally harmful for the minor Plaintiff. There is no recognizable harm to the Defendant or to any public interest to protect the identity of the Plaintiffs.

WHEREFORE, in light of the foregoing, Plaintiffs respectfully request that this Court enter an order in the form of the attached proposed protective order, which provides for the following:

1. Requiring that any filings by the Parties referring to the Plaintiffs of this litigation follow the pseudonyms established by the initial pleadings;

2. Prohibiting the Defendant from identifying any Plaintiff by their real name or identifying information outside of this litigation;

3. Requiring that any filings which absolutely must name or identify any Plaintiff be redacted or impounded in accordance with the Uniform Rules on Impoundment Procedure; and

4. Impounding the affidavits of the Plaintiffs for an appropriate amount of time.

Dated: August 24, 2022

Respectfully submitted,

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

By their attorneys,

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell (BBO #657950)
*nodonnell@sullivanlaw.com*
Patrick P. Dinardo (BBO# 125250)
*pdinardo@sullivanlaw.com*
Ryan M. Rosenblatt (BBO# 698490)
*rrosenblatt@sullivanlaw.com*
Anna Lea Setz (*pro hac vice forthcoming*)
*asetz@sullivanlaw.com*

SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that within three (3) days of a ruling on the above ex parte motion, this document will be served on Defendant with a copy of such ruling as required by Superior Court Rule 9A(d)(1).

/s/ Nicholas M. O'Donnell
Nicholas M. O'Donnell

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

---

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

Civil Action No.: _____

---

## [PROPOSED] PROTECTIVE ORDER AND ORDER ON MOTION FOR IMPOUNDMENT OF AFFIDAVIT OF MINOR PLAINTIFF JIMMY

This matter having come before the Court upon an Ex Parte Motion for Impoundment

and Protective Order, and the Plaintiffs having shown good cause for such a protective order and

impoundment of sensitive identifying information of the minor Plaintiff, it is hereby ORDERED

as follows:

THE COURT ORDERS THAT:

1. The Parties to this action must make all references to the Plaintiffs of this

litigation by following the pseudonyms established by the initial pleadings and the

above caption;

2. The Defendant is prohibited from identifying any Plaintiff by their real name or

identifying information outside of this litigation;

3. If the Parties must absolutely file a document, exhibit, affidavit, pleading, etc.

which refer to the Parties by their real names, or would otherwise reveal the

identities of the Parties to this litigation, such identifying information must be

5

redacted or otherwise impounded and filed in accordance with the Uniform Rules on Impoundment Procedure.

4. The Affidavit of minor Plaintiff Jimmy is impounded for at least three years, or until 60 days after entry of final judgment, whichever occurs later.

SO ORDERED:

_____

Justice of the Superior Court

Dated: _____

<table>
<tr><td rowspan="2">**SUMMONS AND ORDER OF NOTICE**</td><td>DOCKET NUMBER</td><td colspan="2">**Trial Court of Massachusetts**</td></tr>
<tr><td>**2282CV00775**</td><td colspan="2">**The Superior Court**</td></tr>
</table>

| CASE NAME: | |
|---|---|
| Sarah Jones, as Guardian, Parent, and Next Friend of her Minor "Jimmy" vs. Massachusetts Interscholastic Athletic Association | Walter F. Timilty, Clerk of Courts |

To:

Massachusetts Interscholastic Athletic Association

COURT NAME & ADDRESS

Norfolk County Superior Court
650 High Street
Dedham, MA 02026

To the above named defendant(s):

You are hereby summoned and required to serve upon:
Nicholas M O'Donnell, Esq.
Sullivan and Worcester LLP
One Post Off Square
Boston, MA 02109

*A TRUE COPY ATTEST*
*Process Server & Disinterested Person*
*8/29/2022*

an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Dedham either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Preliminary Injunction has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

Date: 09/07/2022

Time: 02:30 PM

Event: Hearing on Preliminary Injunction

Session Location: Civil C / DED-2nd FL, CR 20 (SC)

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED | CHIEF JUSTICE OF THE SUPERIOR COURT Witness: | ASSOCIATE JUSTICE | |
|---|---|---|---|
| 08/24/2022 | Hon. Heidi E Brieger | Hon. Paul D Wilson | |

**RETURN OF SERVICE**

I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint.

PARTY NAME:

X _____

<table>
<tr><td colspan="2"><b>CIVIL TRACKING ORDER</b><br>(STANDING ORDER 1- 88)</td><td><b>DOCKET NUMBER</b><br>2282CV00775</td><td colspan="2"><b>Trial Court of Massachusetts</b><br><b>The Superior Court</b></td></tr>
</table>

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2282CV00775 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| **CASE NAME:** Sarah Jones,as Guardian, Parent, and Next Friend of her Minor "Jimmy" vs. Massachusetts Interscholastic Athletic Association | | Walter F. Timilty, Clerk of Courts |
| TO: Nicholas M O'Donnell, Esq. Sullivan and Worcester LLP One Post Off Square Boston, MA 02109 | | **COURT NAME & ADDRESS** Norfolk County Superior Court 650 High Street Dedham, MA 02026 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

### STAGES OF LITIGATION

### DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 11/22/2022 | |
| Response to the complaint filed (also see MRCP 12) | | 12/22/2022 | |
| All motions under MRCP 12, 19, and 20 | 12/22/2022 | 01/23/2023 | 02/21/2023 |
| All motions under MRCP 15 | 12/22/2022 | 01/23/2023 | 02/21/2023 |
| All discovery requests **and depositions** served and non-expert depositions completed | 06/20/2023 | | |
| All motions under MRCP 56 | 07/20/2023 | 08/21/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/18/2023 |
| Case shall be resolved and judgment shall issue by | | | 08/23/2024 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED | ASSISTANT CLERK | PHONE |
|---|---|---|
| 08/24/2022 | | |

9.b

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

Plaintiffs,

Civil Action No. 2282 CV 775

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' EMERGENCY MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Sarah Jones[1] ("Sarah"), as guardian, parent, and next friend of her minor child

"Jimmy" (Sarah and Jimmy, together the "Plaintiffs")[2], by their undersigned attorneys, move the

Court pursuant to Superior Court Rule 9A(d)(1) and Mass. R. Civ. P. 65 for an order granting

immediate injunctive relief against Defendant, Massachusetts Interscholastic Athletic

Association, Inc. ("MIAA").

### INTRODUCTION

MIAA issued a rule effective July 1, 2022 forbidding students at the Commonwealth's

statewide virtual schools from participating in interscholastic athletics, ending their ability to

---

[1] To protect the identity of the minor Plaintiff, pseudonyms are used for naming in this action (in conjunction with Plaintiffs' concurrently filed Ex Parte Motion to Proceed Pseudonymously).

[2] Plaintiffs bring this action to provide access for the minor child Jimmy now, but Jimmy is a representative member of a group that would warrant certification as a class pursuant to Mass. R. Civ. P. 23, which Plaintiffs and others may amend the Verified Complaint later to include.

obtain a waiver to play. Nearly three years into the COVID-19 crisis, MIAA has singled out the Commonwealth's most vulnerable children and given their families a Hobson's choice: either attend the virtual school that is best for education and their health and forfeit the considerable benefit of athletics, or play sports and forego those academic and medical needs.

Jimmy (seventeen years old) is an accomplished ice hockey player whose talent and hard work have led to the opportunity to play for a junior league team whose regional travel is inconsistent with a traditional high school schedule. For this reason, Jimmy attends The Education Cooperative Connections Academy ("TECCA"), a statewide online public school in Massachusetts that serves students in grades K-12. An adopted son of a working parent, Jimmy's family supports his considerable potential. Jimmy is a well-rounded young man, however, to whom there is considerably more than hockey. Jimmy played and excelled at lacrosse on the Duxbury High School team last year. Jimmy requires the Court's intervention simply to play the sport he has grown to love and from which he has been excluded by MIAA for no reason at all. Jimmy faces the start of the school year with an unanswerable conundrum: return as a matriculating student and forego his best interest, or remain a virtual student and be deprived of the social and athletic benefit of interscholastic athletics with his community and peers.

This arbitrary and capricious rule change by MIAA, a state actor and agency, violates, *inter alia*, the Equal Protection clause of the Fourteenth Amendment to the United States Constitution brought through 42 U.S.C. § 1983, the Massachusetts Constitution, and the Massachusetts Administrative Procedures Act, G.L. c. 30A, §§ 1, *et seq.* as explained further herein. Plaintiffs seek a preliminary injunction.

2

**FACTS**

*Jimmy Enrolls at TECCA*

Sarah moved to Duxbury in 1997. A single working mother, she is an account representative handling supply to large public sector and government clients. Jimmy is seventeen years old. He was born in 2005 in the Russian Federation. Sarah adopted Jimmy when he was eighteen months old. When Sarah adopted him, there were signs that Jimmy had been neglected and/or malnourished as an infant in Russia. Sarah brought Jimmy into her family and raised him with her other son. Jimmy attended Duxbury public schools through ninth grade at Duxbury High School.

Jimmy is a prolific youth hockey player, who plays for a junior league team on Cape Cod that recruits players from around North America. Jimmy's achievements and talent have him in line to be recruited at the highest level of collegiate hockey, and very possibly professional hockey as well. Jimmy's club hockey schedule is extraordinarily demanding, and involves considerable travel. Jimmy cannot realistically attend a traditional school schedule.

Jimmy enrolled at TECCA in the Fall of 2021. TECCA addresses the two most important objectives in Jimmy's life. First and foremost, TECCA addresses Jimmy's educational needs. Jimmy is an intelligent and motivated student, who has challenges related to organization and processing likely related to his life as an infant in Russia. Second, TECCA's virtual platform makes Jimmy's hockey dreams possible for the scheduling reasons noted above. It is the key to his future. In addition to hockey, Jimmy started playing lacrosse at Duxbury High School, where he also excelled. With an MIAA waiver, Jimmy was able to play junior varsity lacrosse in the Spring of 2022 with a waiver that was granted without any controversy or fanfare.

Without an injunction against the MIAA policy, Jimmy will not be able to play lacrosse at Duxbury High School next Spring. Club lacrosse is prohibitively expensive and further time

3

consuming, an impossibility for a single working parent like Sarah. Jimmy wants to play lacrosse with his peers, and does not understand why the MIAA would want to stop him.

*The Education Cooperative Connections Academy*

As noted above, Jimmy is a student at TECCA. TECCA is a State certified public school, approved by the Massachusetts Department of Elementary and Secondary Education ("DESE"), open to students throughout all of Massachusetts. TECCA is (i) subject to Massachusetts' rigorous standards for academic achievement and accountability, (ii) accountable directly to DESE, and (iii) tuition free for all students. As examples, children may need to attend because they have found learning in a classroom to be difficult or impossible, because they have suffered bullying in school, their learning disabilities are best suited for online education, or because they are highly advanced students that are otherwise thriving in school, but need the flexibility of a remote learning environment to hone a special ability, such as sports or acting on film and stage. TECCA is distinct from a single district virtual school, which may be established by an individual school district. TECCA is not a private school. In fact, its tuition is free. By definition as a statewide school, TECCA students live all across the state, so there could never be a TECCA-specific team; it would be a geographic impossibility.

*Massachusetts Interscholastic Athletic Association*

The MIAA is an association that issues rules for nearly all high school sports teams and competitions in the Commonwealth. By virtue of what is in effect a delegation of authority by local school committees under G.L. c. 71, § 47, the MIAA governs and regulates competitive sports among these schools which encompass the vast majority of high school sports programs in Massachusetts. Relevant excerpts of the MIAA handbook are attached to the Verified Complaint as Exhibit A: The MIAA Handbook states that *"athletic participation is a critical component"* of *secondary education and* that "for many students, *the most stable environment in their lives is*

4

*that provided by high school activity programs.*" Verified Complaint, <u>Exhibit A</u> at 10 (emphasis added). Rule 51 in the MIAA Handbook states that "[f]or a student to practice with, or to represent a MIAA member school in athletic competition, the student must be duly enrolled in that school. <u>Id.</u> at 49.

A student who is not enrolled in a particular school may still wish to join the athletic teams of that school in his/her home district. Until recently, *all of those instances in which a student not enrolled in person at the local school were provided the means of overcoming the basic eligibility requirements of Rule 51*, whether by separate approval processes, or the submission and approval of a waiver from the eligibility restrictions. Students in those non-traditional school environments do not have an alternative means of participating in athletic competitions, which the MIAA itself recognizes as a "critical component" of a student's education.

*MIAA's Arbitrary Rule Change*

For reasons unknown to Plaintiffs and nowhere articulated, the MIAA changed Rule 51, effective July 1, 2022, specifically to exclude all students attending a statewide virtual school from ever participating in MIAA programs, without exception or even the ability to submit a waiver request (like that which Jimmy obtained last year). MIAA has failed to provide notice of and open access to its meeting in which such a decision was made, or any publication requirements, simply declaring that:

> *Students, attending Virtual Schools do not meet any of the above requirements, [sic] therefore are ineligible to participate in interscholastic athletics at MIAA Member Schools. Waivers are not permitted for Rule 51.*

Verified Complaint, <u>Exhibit A</u> at 49 (emphasis in original). No change was made to any other Rule regarding non-traditional students. The MIAA thereafter issued a one-page Rule Clarification, attached to the Verified Complaint as <u>Exhibit B</u>, stating that "A virtual school is a

5

separate educational entity where students dis-enroll from their traditional school and attend a virtual school by CHOICE." Verified Complaint, <u>Exhibit B</u> (capitalization in original). Ignoring the fact that waivers had been regularly granted to students attending statewide virtual schools for years (prior versions of the MIAA's waiver request form, including approved waivers for TECCA students, even included a checkbox for "Virtual School" as a reason for submitting the waiver request), the Rule Clarification determined that:

> **Effective July 1, 2022, waivers are not permitted for those students choosing to attend Virtual Schools that have no affiliation to an MIAA member school. These students are ineligible to participate in MIAA interscholastic athletics.**

<u>Id.</u> (emphasis in original). Limiting the prohibition on waivers to students choosing to attend "Virtual Schools that have no affiliation to an MIAA member school" had the effect of treating statewide *virtual* schools (whose students are ineligible) differently from *district* virtual schools (whose students are). Statewide virtual schools are not administered by their local school committee, rather, statewide virtual schools have their own independent administration and staff.

## ARGUMENT

### I. Standard on a Preliminary Injunction.

The standard for granting injunctive relief is well-settled in Massachusetts. A party is entitled to a preliminary injunction if it demonstrates (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiff's likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction." *See, e.g., General Accident Ins. Co. of America v. Bank of New England-West, N.A.*, 403 Mass. 473, 475 (1988); *Davis v. Massachusetts Interscholastic Athletic Ass'n, Inc.*, No. CA942887, 1995 WL 808968, at *1 (Mass. Super. Jan. 18, 1995) (citing *Packaging Indus. Group, Inc. v. Cheney*, 380 Mass. 609, 616-17 (1980)); *see also Bos. City Council v. Mennino*, No. CIV.A.0-1267, 2000 WL 744356

6

(Mass. Super. 2000) ("An injunction may issue properly if the Court concludes that the risk of irreparable harm to a plaintiff, in light of its chances of success on its claim, outweighs the defendant's probable harm and likelihood of prevailing on the merits of the case."). The issuance of a preliminary injunction generally rests within the sound discretion of the judge after weighing all of these factors together. *Gen. Accident Ins.*, 403 Mass. at 475. Where, as here, a preliminary injunction seeks merely to merely preserve the status quo, the issuance of an injunction is "desirable." *See Petricca Const. Co. v. Com.*, 37 Mass. App. Ct. 392, 400 (1994) (citing *Edwards v. Boston*, 408 Mass. 643, 646–647 (1990)) ("It is proper, indeed desirable, to issue an injunction if its issuance is the only way to preserve the status quo and it promotes the public interest to do so, even though it grants the ultimate relief sought.").

## II. Plaintiffs Are Likely to Succeed on the Merits.

### A. Plaintiffs are Likely to Prevail on their Equal Protection Claim.

The Equal Protection Clauses of the United States and Massachusetts[3] Constitutions secure every person against intentional and arbitrary discrimination by state agents. Disparate treatment violates equal protection when there is no justification for the difference in treatment of substantially similar classes of people. *Goodridge v. Dep't of Pub. Health*, 440 Mass. 309, 328-29 (2003). This is such a case. MIAA's Rule 51 singles out students who attend certain (but not all) virtual schools by preventing them from participating in interscholastic athletics.

#### 1. Equal Protection Standard.

In essence, equal protection requires that all persons similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Thus, the purpose

---

[3] The standard of review under the Massachusetts Declaration of Rights is the same as under the Fourteenth Amendment to the Federal Constitution. *See Commonwealth v. Roman*, 489 Mass. 81, 86 (2022) (citing *Commonwealth v. Freeman*, 472 Mass. 503, 505 n.5 (2015)).

7

of an equal protection review is to ensure that there is a legitimate justification for treating similar classes of persons or conduct differently. A statute or regulation violates the right to equal protection if it does not serve "a legitimate purpose in a rational way." *Goodridge*, 440 Mass. at 329–30 (citations omitted). "For equal protection challenges, the rational basis test requires that 'an impartial lawmaker could logically believe that the classification would serve a legitimate public purpose that transcends the harm to the members of the disadvantaged class.'" *Id.* at 330 (quoting *English v. New England Med. Ctr.*, 405 Mass. 423, 428 (1989)).

This inquiry has two parts: first, the end must be a legitimate government objective and second, the classification chosen by the legislature must be rationally related to achieving that objective. *See Romer v. Evans*, 517 U.S. 620, 632 (1996) ("even in the ordinary equal protection case calling for the most deferential of standards, we insist on knowing the relation between the classification adopted and the object to be attained. The search for the link between classification and objective gives substance to the Equal Protection Clause"); *see also Murphy v. Dep't of Correction*, 429 Mass. 736, 742 (1999) (noting that distinctions that are drawn must have "some relevance to the purpose for which the classification is made"). The relationship between a classification and an asserted goal may not be so attenuated as to render the distinction arbitrary or irrational. *See Cleburne*, 473 U.S. at 447. And "[b]y requiring that the classification bear a rational relationship to an independent and legitimate legislative end, we ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law." *Romer*, 517 U.S. at 632 (citations omitted).

Thus, even the most deferential standard of review is not "toothless." *See Goodridge*, 440 Mass. at 330 (citing *Murphy v. Commissioner of the Dep't of Indus. Accs.*, 415 Mass. 218, 233 (1993)). In a variety of contexts, Federal and Massachusetts courts have refused to uphold

8

legislation that failed equal protection analysis under the rational relationship standard of review. *See, e.g., Romer,* 517 U.S. at 634-35 (invalidating a law on equal protection grounds because its only justification was "animosity toward the class of persons affected" which does not constitute "a legitimate governmental interest"); *Cleburne,* 473 U.S. at 433 (requirement for a special use permit violated the equal protection clause because there was no rational basis for the requirement which appeared to rest on an irrational prejudice against the disadvantaged class); *Goodridge,* 440 Mass. at 309 (limitation of protections, benefits and obligations of civil marriage to individuals of opposite sexes lacked rational basis and violated state constitutional equal protection principles); *Murphy,* 429 Mass. at 736 (conceiving of no rational purpose that might be served by distinguishing between persons who were incarcerated on or before a certain date and persons incarcerated after that date); *Davis,* 1995 WL 808968 (finding that the MIAA violated the equal protection clause based on a rational basis review by excluding home schooled students from interscholastic sports); *Murphy,* 415 Mass. at 230 (finding that imposition of filing fees only on litigants proceeding with the assistance of counsel had no rational relationship to the ends to be served); *Sperry & Hutchinson Co. v. McBride,* 307 Mass. 408, 418 (1940) (holding statute had no tendency to prevent fraud or deception and its regulation of trade is merely arbitrary, unreasonable and an illegal interference with the liberty of the citizen).

Courts have recognized that MIAA is a state actor for purposes of constitutional analyses. *See, e.g., Davis,* 1995 WL 808968, at *2 n.3 (noting that the delegation of authority to the MIAA under G.L. c. 71, § 47, allowing the MIAA to govern and regulate competitive sports among most public secondary schools, requires that the passage of MIAA rules be viewed as state action for the purpose of an equal protection analysis); *see also Att'y Gen. v. Mass. Interscholastic*

9

*Athletic Ass'n*, 378 Mass. 342, 349 (1979); *Mancuso v. Mass. Interscholastic Athletic Ass'n*, 453 Mass. 116, 123 (2009) ("We have previously decided that the MIAA is a State actor.").

2. There is No Legitimate Basis for Excluding an Arbitrary Subset of Virtually Schooled Students From Extracurricular Sports.

The MIAA's new Rule 51 excludes students attending certain virtual schools (like Jimmy) from ever participating in MIAA programs, without exception or the ability to submit a waiver request. Other non-traditional students, such as home schooled students, are not affected by the rule. Students who attend a *district* virtual school are unaffected, as opposed to a *statewide* virtual school such as TECCA.

MIAA Rule 51 creates two classes out of a pool of students who otherwise are identical in that they: attend Massachusetts public schools, live in the same home school district, have parents who pay taxes in that same home school district, and wish to play the same sport after school. MIAA created this classification for no reason at all, let alone a rational one. One class of students has all of those shared characteristics and either attends the physical or virtual public school located in their home school district or is home schooled; the other class has all of those shared characteristics and attends a statewide virtual public school. One class is allowed by the MIAA to play the desired sports, while the other is not.

Jimmy lives in Duxbury but attends the virtual public school at TECCA. He is therefore prohibited from even applying to play sports in his home school district as he previously did. By contrast, a student in the same town who is home schooled or who attended a district virtual school (if those were available in that town) would be able to play. This unjust and unequal treatment is the very definition of arbitrary because it is not rationally related to any legitimate state purpose. Even worse, the disadvantaged class is prohibited from exercising any right of

10

redress or appeal, as MIAA Rule 51 explicitly withholds from that class the remedy of seeking a waiver—the first step in obtaining further administrative or judicial review of an arbitrary denial.

The MIAA has failed to provide a valid or reasonable justification for its rule change. In fact, based on its Rule Clarification, it must be assumed that the new Rule 51 is based on a fundamental misunderstanding of statewide virtual schools in the Massachusetts public school system. The MIAA states that:

> A virtual school is a separate educational entity where students dis-enroll from their traditional school and attend a virtual school by CHOICE. This is no different than a student, who is a resident of Milton that chooses to attend Milton Academy. Those students are NOT eligible to participate in interscholastic athletics for Milton High School.

Exhibit B (capitalization in original). Even putting aside the barely-concealed contempt implicit in this invocation of a well-known private school, this would not provide a rational basis to uphold the rule change. Statewide virtual schools like TECCA are public schools just like the Milton High School. They are not comparable to private schools such as Milton Academy.

This case is virtually the same as *Davis*, where the MIAA created two classes of students to exclude home schooled children from afterschool activities. 1995 WL 808968. There, the court found that the MIAA's rule violated the Equal Protection Clause because the different treatment of home schooled children was "not rationally related to a legitimate State purpose" and because it "creates varying treatment of students based on in-school and home-school status and the classification and varying treatment are not rationally related to a legitimate State purpose." *Davis*, 1995 WL 808968, at *2. Here, the facts are even more striking because the MIAA is not excluding all students attending virtual schools (which would be an Equal Protection violation by itself due to the unequal treatment compared to students attending in-person public schools and home schooled students) but the MIAA is only treating *some* virtual schools different than others. This disparate treatment is arbitrary and irrational.

11

**B.** **Plaintiffs are Likely to Prevail on the Merits of Their Claim for a Declaratory Judgment That Defendant Violated the Administrative Procedures Act.**

The Massachusetts Administrative Procedures Act (the "APA") specifically provides that judicial review of regulations may be had through an action for declaratory relief as provided under chapter 231A. G.L. c. 30A, § 7. Because the MIAA violated the APA in a manner designed to harm students like Jimmy, declaratory relief is appropriate in this case.

1. <u>The MIAA Failed to Comply with Section 3 of the APA.</u>

Sections 2 and 3 of the APA provide certain strict notice procedures that serve as a prerequisite to the adoption of any statewide rule or regulation in the Commonwealth. G.L. c. 30A, §§ 2, 3.[4] Under section 3, "Prior to the adoption, amendment, or repeal of any regulation for which a public hearing is not required under section two, the agency shall give notice and afford interested persons an opportunity to present data, views, or arguments." *Id.* Such notice must be provided at least twenty-one days prior to the proposed action, by multiple means, including, *inter alia*, by "publish[ing] notice of its proposed action in such manner as is specified by any law, or, if no manner is specified, then in such newspapers, and where appropriate, in such trade, industry or professional publications as the agency may select" and "fil[ing] a copy of such notice with the state secretary." *Id.* § 3.

"It has long been established that a regulation adopted without compliance with either § 2 or 3 of the APA has been invalidly enacted and is without force or effect." *Am. Catalog Mailers Ass'n v. Heffernan*, 34 Mass.L.Rptr. 419, Case No. 2017-1772 BLS1, 2017 WL 4542944, at *3 (Mass. Super. June 28, 2017) (citing *Kneeland Liquor, Inc. v. Alcoholic Beverages Control*

---

[4] Section 2 of the APA addresses regulations that require a public hearing before promulgation and section 3 addresses those that do not.

12

*Comm.*, 345 Mass. 228, 235 (1962)). As such, any rule or regulation not requiring a public hearing that is adopted or amended by the MIAA, a *de facto* state agency[5], is null and void without compliance with § 3 of the APA.

The changes to MIAA Rule 51 at issue in the Verified Complaint directly harm students attending statewide virtual public schools, meaning such students were entitled to at least twenty-one days' notice of the change to the rule as "interested parties." G.L. c. 30A, § 3. Not only did the MIAA amend its Rule 51 without justification and in violation of the Equal Protection Clause of the Fourteenth Amendment, but it failed to provide *any* of the required APA § 3 notices of the proposed amendment to the relevant parties or the Attorney General. Plaintiffs have been unable to find such notice in any newspaper, publication, or on the Attorney General's website. The changes to the rule are therefore invalid and Plaintiffs are entitled to seek declaratory relief under G.L. c. 231A through § 7 of the APA.

2. <u>Plaintiffs are Entitled to Declaratory Relief.</u>

G.L. c. 231A, § 2 allows an action to be brought in Superior Court "to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any municipal, county or state agency or official which practices or procedures are alleged to be in violation of the Constitution of the United States or of the constitution or laws of the commonwealth...." G.L. c. 231A § 2.[6] "To obtain declaratory relief in a case involving

---

[5] Numerous Massachusetts courts, beginning with the SJC in 1979, have determined that the MIAA is a state actor for purposes of constitutional and statutory analyses. *See supra.*

[6] "For the purpose of [section 2] practices or procedures mean the customary and usual method of conducting municipal, county, state agency or official business. The foregoing enumeration shall not limit or restrict the exercise of the general powers conferred in section one in any proceeding in which declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty." G.L. c. 231A, § 2. Even if the adoption, amendment, and maintenance of the MIAA's rules and regulations is not deemed a usual method of conducting its business, relief is still appropriate through section 1 of chapter 231A.

administrative action, a plaintiff must show that (1) there is an actual controversy; (2) he has standing; (3) necessary parties have been joined; and (4) available administrative remedies have been exhausted." *New Bedford Educators Ass'n v. Chairman of Mass Bd. of Elementary and Secondary Educ.*, 92 Mass. App. Ct. 99, 107 (2017) (quoting *School Comm. of Hudson v. Bd. of Educ.*, 448 Mass. 565, 579 (2007)) (internal quotations and citations omitted).

Plaintiffs have standing. *See Enos v. Sec. of Environ. Affairs*, 432 Mass. 132, 134-35 (2000). "A party has standing pursuant to G.L. c. 231A where the defendant has violated some duty owed to the plaintiff[s] and where the plaintiffs can allege an injury within the area of concern of the statute or regulatory scheme." *Service Employees Intern. Union, Local 509 v. Dept. of Mental Health*, 469 Mass. 323, 328 (2014) (internal quotations and citations omitted). "The notion of standing is an elastic concept whose meaning depends on the particular parties at issue, and standing requirements should be liberally construed in declaratory judgment proceedings." *Id.* (internal quotations and citations omitted). The MIAA has adopted a rule here that not only prevents Jimmy and other similarly situated children from participating in interscholastic sports, but strips them of their rights to seek a waiver, to appeal, or to seek any means of legal redress. MIAA clearly owed a duty under G.L. c. 30A, § 3 to provide proper notice and an opportunity to be heard to "interested parties," including Plaintiffs, prior to the adoption or amendment of its rules. The injury to Plaintiffs therefore plainly falls under the area of concern of § 3—ensuring the provision of notice and an opportunity to be heard before the adoption of rules and regulations that will have an impact on the lives of interested parties.

The action by MIAA that aggrieves Plaintiffs fails the APA. By failing to comply with § 3 of the APA, the MIAA has created a situation in which the Plaintiffs are wrongfully excluded from their chosen sports without any opportunity to be heard or means of redress. Allowing

14

MIAA Rule 51 to stand as-is would eviscerate the intended protections of § 3. Indeed, the Legislature foresaw this precise scenario when it set up the APA to provide a right to judicial review of improperly passed regulations. G.L. c. 30A, § 7; *see also Heffernan*, 2017 WL 4542944, at *5 (converting fully briefed motion for preliminary injunction into final hearing on the merits and issuing final declaratory judgment that the regulation at issue was promulgated without compliance with sections 2 or 3 of the APA and was therefore invalid). Just as in *Heffernan*, the MIAA's procedures in changing MIAA Rule 51 failed to comply with § 3 of the APA, violating the MIAA's duty to notify interested parties affected by the new rule. Plaintiffs therefore satisfy the standing requirement for declaratory relief.

Plaintiffs meet their burden on the other three elements required to obtain a declaratory judgment. The MIAA is acting on its own—there are no other parties necessary to join. Similarly, its own actions prohibiting any means of appeal circumvent the requirement of exhaustion of administrative remedies (and preclude the availability of a certiorari action under G.L. c. 249, § 4 which first requires a judicial or quasi-judicial proceeding).

**III.     Plaintiffs Will Suffer Irreparable Harm in the Absence of an Injunction.**

Harm is irreparable when money damages cannot adequately compensate a plaintiff, or a plaintiff will suffer some other harm that even a judgment in his favor will not remedy. *Packaging Indus. Group, Inc.*, 380 Mass. at 617, n.11 ("rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity."). This case is the very definition of irreparable harm. Every sports season is unique, particularly in the brief span of a high school career. Without injunctive relief, the school year will unfold as Jimmy watches from home. Any practice, any game, any season, that he misses is lost to Jimmy forever. He cannot be compensated for the experiences he misses—any of them. The benefits of

15

interscholastic athletics cannot be quantified or valued by money damages. *Foskett v. Massachusetts Interscholastic Athletic Ass'n, Inc.*, 2177CV00021B, 2021 WL 837091, at *4 (Mass. Super. Ct. Jan. 26, 2021) (enjoining MIAA from barring high school athlete from participating at his transferred school because the denial of an injunction):

> will result in Evan missing playing during one-quarter of his high school eligibility, <u>a high price to pay for a student athlete</u>. More significantly, Evan's mother strongly believes that playing <u>hockey</u>, a sport Evan loves and has played "since he could walk," is necessary to maintain Evan's mental health, especially under the isolating circumstances caused by the Covid-19 pandemic and Evan's relatively recent change in schools. The Court agrees and finds the record is clear that <u>Evan will suffer irreparable harm if it denies the injunction.</u>

(emphases added); *see also Davis*, 1995 WL 808968, at *3 (granting injunction against the MIAA because awaiting a final judgment may cause the student irreparable harm, requiring her to forfeit the entire softball season).

*Foskett* provides the roadmap for the harm analysis here. Jimmy derives critical benefits from high school sports, and will suffer uncertainty, anxiety, and permanently lost opportunity if this discrimination is not rectified. Every day that Jimmy is left to twist in the wind about whether to matriculate at in-person high school is harm that cannot be undone, and were he to change schools mid-year, that would be a disruption for which MIAA can offer no justification. The point is not to assess how many lost days would harm him or when the lacrosse season starts. The larger point in any event is that MIAA intends to exclude him for the entire school year, and the burden of that uncertainty on a student athlete is inexcusable. And there will never again be a 2022-23 season for the Duxbury High School lacrosse team. He is qualified and able to play. He was a contributor who should be looking forward to the year ahead with excitement. Instead, he begins the school year with the uncertainty and anxiety of not knowing whether he will be denied the inarguable benefits of school sports for no reason at all.

MIAA itself describes the interaction of school sports with the constitutionally-guaranteed right of education as follows:

> Within high school sport programs, young people learn the values associated with discipline, performing under stress, teamwork, sacrifice, commitment, effort, accountability, citizenship, sportsmanship, confidence, leadership and organizational skills, participating within rules, physical well-being and healthy lifestyles, striving towards excellence, and many other characteristics that come quickly to the mind of any educator....

Verified Complaint, Exhibit A, at 10. Since Jimmy and the other children of Massachusetts were sent home abruptly in March of 2020, they have borne a crushing weight of the pandemic's uncertainty. For months many of them could not participate in *any* interactive experiences with their peers, whether educational or athletic. It is beyond peradventure that children will be carrying and recovering from this trauma for years, if not their entire lives. Conversely, the return of extracurricular activities has been a lifeline to these children. MIAA's harm to Plaintiffs is not merely arbitrary and irreparable, it is cruel.

IV.     **The Balance of Harms if the Status Quo Ante is Not Preserved Favors the Plaintiffs.**

Enjoining the exclusion of statewide virtual school students would not harm MIAA at all. MIAA had a rule governing waivers, and changed it for no discernable reason. MIAA would suffer no harm in being held to its previous longstanding approach. The categorial and opaque manner of the rule's enactment suggests that the only harm MIAA would perceive is challenge to its total (and unearned) authority. The harm to Jimmy overwhelms MIAA's need for control in the balance. Indeed, the harm to Plaintiffs so overwhelming outweighs any arguable harm to the MIAA that the Court may decline even to reach a conclusion about the likely merits. *Bos. City Council*, 2000 WL 744356.

17

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the order in the form accompanying the Motion.

Dated:  August 24, 2022

Respectfully submitted,

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy,"

By their attorneys,

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell (BBO #657950)
*nodonnell@sullivanlaw.com*
Patrick P. Dinardo (BBO# 125250)
*pdinardo@sullivanlaw.com*
Ryan M. Rosenblatt (BBO# 698490)
*rrosenblatt@sullivanlaw.com*
Anna Lea Setz (*pro hac vice forthcoming*)
*asetz@sullivanlaw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA  02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

18

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that on or about August 24, 2022, this document was served on Defendant by hand as part of the service of process.

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell

19

RECE'VED & FILED
CLERK OF THE COURTS
NORFULK COUNTY

8/24/22

10.0

**COMMONWEALTH OF MASSACHUSETTS**

NORFOLK, ss.

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Civil Action No.: 22 82CV775

## AFFIDAVIT OF PATRICK LATTUCA

I, Patrick Lattuca, being duly sworn do hereby depose and say:

1.      I am filing this affidavit in connection with Plaintiff's Emergency Motion for Preliminary Injunction.  I have read the Verified Complaint and Request for Injunctive Relief filed in this action.

2.      I am currently the Superintendent of The Education Cooperative Connections Academy ("TECCA"), prior to which I served as the Principal of TECCA.  I am certified in the Commonwealth of Massachusetts as a Superintendent and Principal.

3.      I hold a BA in Education and Sociology from the University of Massachusetts, Amherst, an MA in Educational Leadership from Bridgewater State University, and a Ph.D. in Education from the University of Rhode Island/Rhode Island College.

4.      I am personally familiar with the facts and circumstances stated in paragraphs 31, 32, 33, 34, 35, 36, 37, 38, 39 (first sentence), 42, 43, 44, 46, 47, 48, 49, 50, 51, 52, 53 (except to the extent that the assertion is addressed to the state of the plaintiff's knowledge), 54, (except to the extent that the assertion is addressed to the state of the plaintiff's knowledge), 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 68, 70 (first sentence on information and belief) and 71, (on information and belief) in the Verified Complaint, and those facts are true to my own knowledge, except those facts stated on information and belief, and as to those facts, I believe them to be true.

Signed under the pains and penalties of perjury this 22 day of August 2022.

Patrick Lattuca

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy,"

Plaintiffs.

Civil Action No.: _____

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

8/24/22
RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY

## AFFIDAVIT OF ROBERT C. MAGUIRE

I, Robert C. Maguire, being duly sworn do hereby depose and say:

1. I am filing this affidavit in connection with the Plaintiff's Emergency Motion for Preliminary Injunction. I have read the Verified Complaint and Request for Injunctive Relief filed in this action.

2. I am currently retired. Earlier this year I left the board of trustees of The Education Cooperative Connections Academy ("TECCA"), a position I held from 2014. In addition, of relevance here, I served on the Lacrosse Committee of the Massachusetts Interscholastic Athletic Association ("MIAA") for many years.

3. I have an extensive background in education. Early in my career, I was a high school teacher, guidance counselor, and coach. I have also worked in high school administration and leadership as principal of the Medfield High School in Medfield, Massachusetts. From 1999 to 2013, I served as the superintendent of the Medfield Public Schools. After my retirement from the Medfield schools, I worked for the Cambridge Network, an international education company

focused mainly in China.

4. I hold a BA in history from the Westfield State University and an MA in counseling and guidance from Worcester State University.

5. I was deeply involved in the creation of the virtual school model in Massachusetts. I was a board member of the TEC Collaborative, a group of superintendents in Massachusetts, that explored the logistics and benefits of virtual education. I was part of a team that traveled around the U.S. to meet with virtual education providers. Eventually, this led to the creation of TECCA. I also participated in the legislative process that created the ability to create virtual public schools in the Commonwealth.

6. I am personally familiar with the facts and circumstances stated in paragraphs 31, 32, 33, 34, 35, 36, 37, 38, 39 (first sentence), 42, 43, 44, 46, 47, 48, 49, 50, 51, 52, 53 (except to the extent that the assertion is addressed to the state of the plaintiff's knowledge), 54, (except to the extent that the assertion is addressed to the state of the plaintiff's knowledge), 55, 56, 57, 58, 59, 60, 61, 62, 63, 65, 66, 68, 70 (first sentence on information and belief) and 71, (on information and belief) in the Verified Complaint, and those facts are true to my own knowledge, except those facts stated on information and belief, and as to those facts, I believe them to be true.

Signed under the pains and penalties of perjury this 23rd day of August 2022.

Robert C. Maguire

| SUMMONS AND ORDER OF NOTICE | DOCKET NUMBER<br>2282CV00775 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

**CASE NAME:**

Sarah Jones, as Guardian, Parent, and Next Friend of her Minor ~~"Jimmy" vs. Massachusetts Interscholastic Athletic Association~~

Walter F. Timilty, Clerk of Courts

To:

Massachusetts Interscholastic Athletic Association

**COURT NAME & ADDRESS**

Norfolk County Superior Court
650 High Street
Dedham, MA 02026

To the above named defendant(s):

You are hereby summoned and required to serve upon:

Nicholas M O'Donnell, Esq.
Sullivan and Worcester LLP
One Post Off Square
Boston, MA 02109

an answer to the complaint which is herewith served upon you. This must be done within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this Court at Dedham either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

**WE ALSO NOTIFY YOU** that application for a Preliminary Injunction has been made in said action, as it appears in the complaint. A hearing on this matter has been scheduled for:

Date: 09/07/2022

Time: 02:30 PM

Event: Hearing on Preliminary Injunction

Session Location: Civil C / DED-2nd FL, CR 20 (SC)

at which time you may appear and show cause why such application should not be granted.

| DATE ISSUED | CHIEF JUSTICE OF THE SUPERIOR COURT<br>Witness: | ASSOCIATE JUSTICE | |
|---|---|---|---|
| 08/24/2022 | Hon. Heidi E Brieger | Hon. Paul D Wilson | |

**RETURN OF SERVICE**

I hereby certify and return that on _____, I served a copy of this summons, together with a copy of the Complaint.

See Page 2.

PARTY NAME:

X

Date/Time Printed: 08-24-2022 11:10:03

SCV027\ 04/2017

PROOF OF SERVICE OF PROCESS

I hereby certify and return that on **August 29, 2022 @ 2:50 pm**, I served a copy of the summons together with a copy of the complaint in this action, upon the within named defendant, in the following manner (See Mass. R. Civ. P. 4(d) (1-5): By delivering "in hand" upon Katie Kampersal, Administrative Assistant, for MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION at 33 FORGE PKWY, FRANKLIN, MA 02038-3135.

Dated:    August 29, 2022          Signature:   William H. Dewsnap, III, Special Process Server

N. B.          To Process Server:

Please enter the date that you made service on the defendant in this box - Both on the original summons and on the copy of the summons served on the defendant.

| August 29, 2022 |
| --- |

Documents Served: Summons and Short Order of Notice; Tracking Order; Verified Complaint and Request for Injunctive Relief; Civil Action Cover Sheet; Ex Parte Motion for Special Process Server; Emergency Motion for Preliminary Injunction; Memorandum of Law in Support of Emergency Motion for Preliminary Injunction; Lattuca Affidavit; McGuire Affidavit; Ex Parte Motion to Proceed Pseudonymously; Affidavit of Minor Jimmy REDACTED; Ex Parte Motion for Protective Order and to Impound Affidavit; Affidavit of Patricia Lattuca; Affidavit of Robert Maguire; Endorsed Order on (3) Motion for Special Process Server; Endorsed Order on (4) Motion for Preliminary Injunction; Endorsed Order on (6) Motion to Proceed Pseudonymously; and Endorsed Order on (8) Motion to Impound Affidavit.

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy," and John
SMITH and Jane SMITH, as guardians,
parents, and next friends of their minor child
"Timmy," on behalf of themselves and all
others similarly situated,

Civil Action No.: 2282CV00775

*9/1/2022 Allowed in part as a temporary order until further hearing scheduled for September 7, 2022.*

*Laghton, J.*

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

## SMITH PLAINTIFFS' EX PARTE MOTION TO PROCEED PSEUDONYMOUSLY

John SMITH and Jane SMITH, as guardians, parents, and next friends of their minor

child "Timmy," (John, Jane and Timmy, together the "Smith Plaintiffs"), by their undersigned

attorneys, hereby move the Court pursuant to the Massachusetts Rules on Impoundment

Procedure, to enter an Ex Parte Order to proceed pseudonymously.[1] In support thereof, this case

involves the interests of minor child Timmy and the facts of this case involve references to the

minor's highly confidential health information including mental health information and learning

disability diagnoses. To further protect the identity of the minor, Timmy's parents must also

proceed pseudonymously to avoid any connection to the minor by way of his parents' name.

---

[1] This Motion should be read in conjunction with the concurrently filed (i) Ex Parte Motion to Impound the
Affidavit of Timmy, and (ii) Affidavit of Timmy. Further, this motion is brought in conjunction with this Court's
endorsement allowing Plaintiffs' Motion to Proceed Pseudonymously (Dkt. #6.0) entered on August 24, 2022 in this
matter.

Courts in Massachusetts routinely allow plaintiffs in similar circumstances to proceed pseudonymously. *See Doe v. Superintendent of Schools of Worcester*, 421 Mass. 117 (Mass. 1995) (plaintiff minor allowed to proceed pseudonymously to protect identity in challenging expulsion for carrying knife to school); *Doe ex rel. Doe v. Yunits*, 15 Mass. L. Rptr. 278, (Mass. Super. 2001) (plaintiff minor allowed to proceed pseudonymously to protect identity in challenging school dress code application to those diagnosed with gender identity disorder). Accordingly, Plaintiffs respectfully request that this Court enter an order:

1. Permitting Plaintiffs to file the accompanying First Amended Verified Complaint and accompanying documents in this litigation using the pseudonyms in the above-referenced caption; and

2. Directing that all documents filed in this action, and all judgments, orders, decisions, notices and any other documents relating to the action, including those filed by the Court or the Clerk, refer to the Smith Plaintiffs by the pseudonyms in the above-referenced caption.

WHEREFORE, in light of the foregoing, the Smith Plaintiffs respectfully request that this Court enter an order in the form of the attached proposed order providing for the relief requested herein.

Dated: August 31, 2022

Respectfully submitted,

John SMITH and Jane SMITH, as guardians, parents, and next friends of their minor child "Timmy,"

By their attorneys,

*/s/ Nicholas M. O'Donnell*
Nicholas M. O'Donnell (BBO #657950)
*nodonnell@sullivanlaw.com*
Patrick P. Dinardo (BBO# 125250)
*pdinardo@sullivanlaw.com*

Ryan M. Rosenblatt (BBO# 698490)
*rrosenblatt@sullivanlaw.com*
Anna Lea Setz (*pro hac vice forthcoming*)
*asetz@sullivanlaw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA  02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC
185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that within three (3) days of a ruling on the above ex parte motion, this document will be served on Defendant with a copy of such ruling as required by Superior Court Rule 9A(d)(1).

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy," and John
SMITH and Jane SMITH, as guardians,
parents, and next friends of their minor child
"Timmy," on behalf of themselves and all
others similarly situated,

Civil Action No.: 2282CV00775

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

## [PROPOSED] ORDER ON EX PARTE MOTION TO PROCEED PSEUDONYMOUSLY

This matter having come before the Court upon an Ex Parte Motion to Proceed

Pseudonymously, and John SMITH and Jane SMITH, as guardians, parents, and next friends of

their minor child "Timmy," (John, Jane and Timmy, together the "Smith Plaintiffs") having

shown good cause for such an order to impound sensitive identifying information of minors, it is

hereby ORDERED as follows:

THE COURT ORDERS THAT:

1.  Plaintiffs are permitted to file their First Amended Verified Complaint and

    accompanying in this litigation using the pseudonyms in the above-referenced

    caption;

2.  All subsequent documents filed in this action, and all judgments, orders,

    decisions, notices and any other documents relating to the action, including those

filed by the Court or the Clerk, shall refer to the Smith Plaintiffs by the

pseudonyms in the above-referenced caption; and

3. Such pseudonyms shall remain in use and effect until further Order of this Court.

SO ORDERED:

_____

Justice of the Superior Court

Dated: _____

# 16

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

---

Sarah JONES, as guardian, parent, and next
friend of her minor child "Jimmy," and John
SMITH and Jane SMITH, as guardians,
parents, and next friends of their minor child
"Timmy," on behalf of themselves and all
others similarly situated,

Plaintiffs,

v.

MASSACHUSETTS INTERSCHOLASTIC
ATHLETIC ASSOCIATION,

Defendant.

Civil Action No.: 2282CV00775

*9/1/2022 Allowed in part as
Follows: As set out in my ruling
regarding Paper #8 (motion to
impound affidavit of "Jimmy")
and for the same reason, based
upon the same finding of potential
irreparable injury, the court orders
impoundment of the minor plaintiff's
affidavit until hearing currently
scheduled for September 7, 2022.
Otherwise, the motion is Denied*

*Leighton, J.*

## EX PARTE MOTION TO IMPOUND THE AFFIDAVIT
## OF MINOR PLAINTIFF TIMMY

John SMITH and Jane SMITH, as guardians, parents, and next friends of their minor

child "Timmy," (John, Jane and Timmy, together the "Smith Plaintiffs"), by their undersigned

attorneys, hereby move the Court ex parte pursuant to the Massachusetts Rules on Impoundment

Procedure, to enter an Ex Parte Order to impound the Affidavit of Timmy.[1] In support thereof,

the Affidavit of Timmy involves the interests of minor child Timmy and references to the

minor's highly confidential health information including mental health information and learning

---

[1] This Motion should be read in conjunction with the concurrently filed Ex Parte Motion to Proceed
Pseudonymously and the Affidavit of Timmy. Further, this motion is brought in conjunction with this Court's
endorsement on Plaintiffs' Motion to Impound The Affidavit of Minor Plaintiff Jimmy, and for Entry of a Protective
Order Concerning Plaintiffs' Identities (Dkt. #8.0), allowed as to Impoundment of the Affidavit of Minor Jimmy,
entered on August 24, 2022 in this matter.

disability diagnoses. To further protect the identity of the minor, Timmy's parents must also proceed pseudonymously to avoid any connection to the minor by way of his parents' names.

Courts in Massachusetts routinely allow plaintiffs in similar circumstances to proceed pseudonymously. *See Doe v. Superintendent of Schools of Worcester*, 421 Mass. 117 (Mass. 1995) (plaintiff minor allowed to proceed pseudonymously to protect identity in challenging expulsion for carrying knife to school); *Doe ex rel. Doe v. Yunits*, 15 Mass. L. Rptr. 278, (Mass. Super. 2001) (plaintiff minor allowed to proceed pseudonymously to protect identity in challenging school dress code application to those diagnosed with "gender identity disorder"). Such pseudonyms must be made a requirement of the opposing parties as well, or the protections granted to the moving party will be serve no purpose.

Likewise, a party may request that certain parts of the case be impounded to preserve their protected privacy rights and confidentiality. It is "[t]hrough the balancing test that a judge makes the determination of 'good cause.'" *H.S. Gere & Sons, Inc. v. Frey*, 400 Mass. 326, 329 (1987). To determine whether good cause is shown, a judge must balance the rights of the parties based on the particular facts of each case, and take into account all relevant factors, including, but not limited to, the nature of the parties and the controversy, the type of information and the privacy interests involved, the extent of community interest, and the reason for the request. *New England Internet Café, LLC v. Clerk of the Superior Court for Criminal Business in Suffolk County*, 462 Mass. 76, 83 (2012).

In this case, the Smith Plaintiffs should be allowed to proceed pseudonymously and have the affidavit filed herewith be impounded. This case is being brought on behalf of a minor whose medical diagnoses and learning abilities are discussed in detail that should not be publicly available, whose disclosure would serve no interest, and whose impoundment does not prejudice

Defendant. Having such information become public knowledge may be traumatic and developmentally harmful for the minor Plaintiff. There is no recognizable harm to the Defendant or to any public interest to protect the identity of the Smith Plaintiffs.

WHEREFORE, in light of the foregoing, the Smith Plaintiffs respectfully request that this Court enter an order which provides for the following:

1. Requiring that any filings referring to the Smith Plaintiffs filed by the Parties of this litigation follow the pseudonyms established by the initial pleadings; and

2. Impounding the Affidavit of minor Plaintiff Timmy for an appropriate amount of time.

Dated: August 31, 2022

Respectfully submitted,

John SMITH and Jane SMITH, as guardians, parents, and next friends of their minor child "Timmy,"

By their attorneys,

/s/ Nicholas M. O'Donnell
Nicholas M. O'Donnell (BBO #657950)
nodonnell@sullivanlaw.com
Patrick P. Dinardo (BBO# 125250)
pdinardo@sullivanlaw.com
Ryan M. Rosenblatt (BBO# 698490)
rrosenblatt@sullivanlaw.com
Anna Lea Setz (pro hac vice forthcoming)
asetz@sullivanlaw.com
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
Tel: 617.338.2800
Fax: 617.338.2880

and

Frank J. Bailey (BBO # 026485)
President
PIONEERLEGAL, LLC

185 Devonshire Street
Boston, MA 02110
M: 617 877 9511
Frank.bailey@pioneerlegal.org

## CERTIFICATE OF SERVICE

I, Nicholas M. O'Donnell, certify that within three (3) days of a ruling on the above ex parte motion, this document will be served on Defendant with a copy of such ruling as required by Superior Court Rule 9A(d)(1).

/s/ *Nicholas M. O'Donnell*
Nicholas M. O'Donnell

# COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

Sarah JONES, as guardian, parent, and next friend of her minor child "Jimmy," and John SMITH and Jane SMITH, as guardians, parents, and next friends of their minor child "Timmy," on behalf of themselves and all others similarly situated,

Plaintiffs,

Civil Action No.: 2282CV00775

v.

MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION,

Defendant.

## [PROPOSED] ORDER ON MOTION FOR IMPOUNDMENT OF AFFIDAVIT OF MINOR PLAINTIFF TIMMY

This matter having come before the Court upon an Ex Parte Motion for Impoundment and Protective Order, and John SMITH and Jane SMITH, as guardians, parents, and next friends of their minor child "Timmy," (John, Jane and Timmy, together the "Smith Plaintiffs") having shown good cause for the impoundment of sensitive identifying information of minor Plaintiff Timmy, it is hereby ORDERED as follows:

THE COURT ORDERS THAT:

1. The Parties to this action must make all references to the Smith Plaintiffs of this litigation by following the pseudonyms established by the initial pleadings and the above caption; and

2. The Affidavit of minor Plaintiff Timmy is impounded for at least three years, or until 60 days after entry of final judgment, whichever occurs later.

5

SO ORDERED:

_____

Justice of the Superior Court

Dated: _____