UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SARAH JONES, *as next friend of her minor child "Jimmy," on behalf of herself and all others similarly situated*; and JOHN SMITH and JANE SMITH, *as next friends of their minor child "Timmy," on behalf of themselves and all others similarly situated*; Plaintiffs, v. MASSACHUSETTS INTERSCHOLASTIC ATHLETIC ASSOCIATION, Defendant. | Case No. 22-CV-11426-AK |

**MEMORANDUM AND ORDER ON
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**A. KELLEY, D.J.**

In this action, the Court is asked to issue an injunction requiring the Massachusetts Interscholastic Athletic Association ("Defendant or "MIAA"), which governs high school athletics in the Commonwealth, to permit two students enrolled in a statewide virtual public high school to participate in athletics as members of the teams of their local brick-and-mortar high schools. For the reasons stated below, the Court **DENIES** Plaintiffs' motion for injunctive relief.

1

I.     **BACKGROUND**

   a.  **The Parties**

The Plaintiffs in this action are Sarah Jones, mother of "Jimmy," and John and Jane Smith, parents of "Timmy."[1]  Jimmy is a seventeen-year-old student at The Education Cooperative Connections Academy ("TECCA"), a statewide online public school in Massachusetts that serves students in kindergarten through 12th grade.  [Dkt. 4-1 at ¶¶ 9, 4].  Jimmy was born in the Russian Federation in 2005, adopted by Sarah Jones at the age of 18 months, and attended Duxbury High School before enrolling at TECCA in 2021.  [Id. at ¶¶ 25–27].  Sarah Jones cites Jimmy's club hockey schedule as well as challenges related to his organization and processing abilities, likely related to his potential neglect and malnourishment as an infant in Russia, as factors in her decision to enroll him in TECCA.  [Id. at ¶¶ 28–35].

Timmy is a sixteen-year-old, 10th grade student at TECCA.  [Id. at ¶ 43].  He suffers from a social anxiety disorder and sensory integration dysfunction.  [Id. at ¶ 40].  Timmy attended brick-and-mortar public schools, where he experienced bullying, until 6th grade.  [Id. at ¶ 41].  His parents chose to enroll him at TECCA beginning with his 7th grade year in 2019, citing the psychological harm inflicted upon him by bullying at his prior school as a factor in their decision.  [Id. at ¶¶ 42–43].

---

[1] The names of Plaintiffs and their minor children are all pseudonyms.  Prior to removal, the Norfolk County Superior Court granted Plaintiffs' motions to proceed pseudonymously on a temporary basis. [See Dkt. 1-1 at 6].  However, in light of these orders' temporary basis, along with recent First Circuit precedent governing pseudonymous litigation, on October 11, 2022, this Court ordered [Dkt. 26] that if Plaintiffs wish to proceed under pseudonyms, they must file a motion to proceed pseudonymously, as well as a document under seal containing Plaintiffs' true identities.  Doe v. Massachusetts Inst. of Tech., 46 F.4th 61, 70 (1st Cir. 2022) (holding that, where a Doe's "true identity is unknown" to the Court, it is "problematic because it renders a meaningful recusal check impossible," while also creating circumstances where "giving the judgment preclusive effect in future litigation would be dicey. It follows that courts tasked with resolving pseudonymity motions must be afforded the anonymous party's true name under seal.").

MIAA is a not-for-profit association that governs most high school athletics in Massachusetts. [Id. at ¶ 58]. MIAA includes approximately 375 member schools, including a large majority of the public secondary schools in the Commonwealth. [Id. at ¶¶ 58–59]. Pursuant to state statute, local school boards have delegated to MIAA the power to govern and regulate competitive athletic events with its member schools. [Id. at ¶ 59].

b. **TECCA**

TECCA is a public school certified by the Massachusetts Department of Elementary and Secondary Education ("DESE") that is open to students throughout all of Massachusetts. [Id. at ¶ 51]. As a statewide virtual school, it is distinct from district virtual schools, which enroll students from only a limited geographic area in online classes. [Id. at ¶ 57]. The school is subject to state achievement and accountability standards, is accountable to DESE, and does not charge tuition. [Id. at ¶ 52]. TECCA offers a full array of special educational services for students with disabilities. [Id. at ¶ 54].

Pursuant to the rules and procedures described *infra*, students at TECCA had for many years played for the athletic teams of their local district brick-and-mortar high schools. [Id. at ¶ 55]. TECCA has not sponsored athletic teams because its student body lives throughout the state. [Id. at ¶ 56]. However, TECCA recently applied to become a member of MIAA.[2]

---

[2] Defendant states it received TECCA's application for membership on September 13, 2022. [Dkt. 17 at ¶ 5]. Defendant further states the application as filed (and attached as an exhibit to MIAA's supplemental opposition filing [see Dkt. 17-3]), is "incomplete[,] … only anticipates offering cross-country – not soccer or lacrosse," and also does not select the option on the form that would allow students like Plaintiffs, whose schools are too small to have their own sports teams, to participate in their local district public schools' teams. [Id.] The Court has yet to be informed as to the status of TECCA's recent application.

### c. MIAA Rule 51 and Waivers

MIAA publishes a handbook that contains, among other items, rules that govern student eligibility to participate in MIAA athletic programs. [Id. at ¶ 66]. Rule 51 is the baseline eligibility rule, and provides that:

> For a student to practice with, or to represent a MIAA member school in athletic competition, the student must be duly enrolled in that school. Additionally, the student must be a candidate for that school's diploma, subject to the jurisdiction of that school's principal (i.e. the principal must have the authority to suspend the student from classes), and under the supervision of that school principal (i.e. the principal must have control and knowledge of the student's daily attendance and achievement).

[Id. at ¶ 67]. Rule 51 thus generally requires that a student must be enrolled at a school in order to be a member of any of that school's athletic teams. [Id. at ¶ 68].

The MIAA handbook contains further rules detailing procedures by which students *not* enrolled at a school may be eligible to join that school's teams. [Id. at ¶ 71]. These procedures include separate approval processes, and, in at least some instances, require students to seek a waiver of the Rule 51 restriction from MIAA on Form 200, which is MIAA's pre-created wavier form. [Id. at ¶¶ 69, 71–72]. These rules creating exceptions to Rule 51 have permitted, for example, home schooled students, foreign exchange students, middle school students attending a combined middle-high school, and students attending virtual public schools to participate on high school athletic teams. [Id. at ¶ 68].

Effective July 1, 2022, MIAA amended Rule 51 as follows:

> Students attending Virtual Schools do not meet any of the above requirements, therefore are ineligible to participate in interscholastic athletics at MIAA Member Schools. Waivers are not permitted for Rule 51.

[Id. at ¶¶ 73, 75]. MIAA did not simultaneously make changes to the rules permitting other types of non-traditional students to join high school athletic teams. [Id. at ¶ 76]. MIAA issued a Rule Clarification, which indicated that "'A virtual school is a separate educational entity where

4

students dis-enroll from their traditional school and attend a virtual school by CHOICE,'" and compared students enrolled in virtual public schools to students enrolled in private schools, who are likewise not permitted to join the athletic teams of their local public high schools. [Id. at ¶ 77; see also id. at p. 38].

### d. Effect of Rule 51 on TECCA Students

Since enrolling at TECCA, Jimmy and Timmy have each participated on the athletic teams of their local brick-and-mortar public high school. In the spring of 2022, Jimmy sought to play lacrosse on the Duxbury High School junior varsity team. [Id. at ¶¶ 34–35]. The Duxbury High School athletic and academic administrations applied for a MIAA waiver on Jimmy's behalf, and MIAA granted that waiver, permitting Jimmy to compete in the spring 2022 season. [Id. at ¶ 35].

In each year since 2019, Timmy has sought to play soccer with his local public school teams. [Id. at ¶¶ 42–44]. He received a MIAA waiver allowing him to play in each season from 2019 through 2021. [Id.]

Plaintiffs allege that the amendment to Rule 51 as of July 1, 2022, will prohibit both Jimmy and Timmy from participating any further on their local public schools' athletic teams. [Id. at ¶¶ 37, 46]. Specifically, Timmy seeks to play soccer in the fall 2022 season, while Jimmy seeks to play lacrosse in the spring 2023 season. [Id.] Moreover, Plaintiffs allege there may be up to 35 similarly situated students who could bring claims involving near-identical questions of fact and law as those raised by Jimmy and Timmy and indicate an intent to pursue a class action on such basis. [Id. at ¶¶ 16–21].

5

### e. Procedural History

On August 24, 2022, Sarah Jones, as next friend of Jimmy, filed suit against MIAA in Norfolk County Superior Court, alleging that the amendment to Rule 51 violated both Jimmy's Fourteenth Amendment due process rights and the Massachusetts Administrative Procedure Act. [See Dkt. 1-1 at 1–37]. Ms. Jones simultaneously filed an emergency motion for a preliminary injunction seeking to bar enforcement of the amendment to Rule 51. [See Dkt. 1-1 at 40–44]. On August 31, 2022, Plaintiffs served their First Amended Complaint. [See Dkt. 4-1; see also Dkt. 7 at ¶ 4]. This complaint added the Smiths, as next friends of Timmy, as plaintiffs, and further indicated that "approximately 35 other students attending statewide virtual public schools in Massachusetts may ultimately make up a class of Plaintiffs with identical claims. [Dkt. 4-1 at ¶ 13].

On September 6, 2022—and with Ms. Jones's emergency motion still pending—MIAA timely removed this case to federal court. [Dkt. 1]. On September 7, 2022, Plaintiffs filed a renewed emergency motion for a preliminary injunction [Dkt. 5], along with an accompanying memorandum of law [Dkt. 6] and affidavit by counsel [Dkt. 7]. MIAA opposed Plaintiffs' motion. [Dkts. 15, 17]. On September 13, 2022, the Court held a hearing on the motion, during which it directed the parties to confer as to whether a temporary compromise could be reached for the sake of the students wishing to play this year. [See Dkts. 16, 24]. Such a compromise would have permitted the Court to address the issues of law presented in this case only once—after the conclusion of discovery and full briefing on the merits—rather than in this posture.

Moreover, Plaintiffs informed the Court at the motion hearing that TECCA had an application to join MIAA already prepared and ready to submit—raising the prospect of potential compromise if MIAA were to receive and begin processing TECCA's application (with the

6

ostensible likelihood TECCA would be accepted as a member school), and thereafter agree to suspend application of its amendment to Rule 51 for the remainder of the academic year—effectively giving the case time to either be fully litigated on the merits, or otherwise rendered moot.  However, the parties were unable to reach any sort of agreement [see Dkts. 21, 23], and the Court now addresses the motion.

## II.   LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy never awarded as of right."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).  When considering a preliminary injunction, the Court must evaluate "(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest."  González-Droz v. González-Colon, 573 F.3d 75, 79 (1st Cir. 2009) (quoting Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008)).  The party seeking the preliminary injunction "bears the burden of establishing that these four factors weigh in its favor."  Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006).

## III.   DISCUSSION

The Court considers each of the four factors discussed above in turn, and whether Plaintiffs have met their burden of establishing that they weigh in their favor.

**a. Likelihood of Success on the Merits**

To demonstrate a likelihood of success on the merits, a plaintiff seeking a preliminary injunction must show "more than mere possibility of success—rather, they must establish a 'strong likelihood' that they will ultimately prevail." Sindicato P.R. de Trabajadores v. Fortuño, 699 F.3d 1, 10 (1st Cir. 2012) (quoting Respect Maine PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010)).  Courts place "particular emphasis" on this factor, Get In Shape Franchise, Inc. v. TFL Fishers, LLC, 167 F. Supp. 3d 173, 198 (D. Mass. 2016), as, if the moving party cannot demonstrate they are likely to succeed, "the remaining factors become matters of idle curiosity," id. (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)). The Court need only determine the "probable outcome" of the underlying claims; it need not resolve the issues presented with certainty.  See id.

*i. Claim 1: Equal Protection*

Here, the Plaintiffs assert two causes of action.  First, they assert a federal constitutional claim under the Equal Protection Clause of the Fourteenth Amendment, arguing that MIAA impermissibly discriminated against Plaintiff students on the basis of their attendance at a virtual public school.  An Equal Protection Claim requires "proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013).

Courts apply different levels of review, or scrutiny, to Equal Protection Clause claims based off the type of impermissible classification the plaintiff alleges the defendant made.  A

8

"suspect class," such as race, religion, or national origin, receives a heightened level of scrutiny. Mazzarino v. Massachusetts State Lottery Comm'n, No. 21-CV-11516-MPK, 2022 WL 2713733, at *6 (D. Mass. July 13, 2022); see United States v. Carolene Prods., 304 U.S. 144, 152 n.4 (1938) (identifying "prejudice against discrete and insular minorities" as grounds for heightened scrutiny). Conversely, a classification targeting a non-suspect class is subject to rational basis review. Cook v. Gates, 528 F.3d 42, 61 (1st Cir. 2008). To survive rational basis review, a state actor must merely show that its regulation is "rationally related to a legitimate state interest." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985); see Engquist v. Oregon Dept. of Agric., 553 U.S. 591, 602 (2008) ("When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference, to ensure that all persons subject to legislation or regulation are indeed being treated alike, under like circumstances and conditions.").

Plaintiffs assert that caselaw holding exclusion of home-school students from MIAA participation violates the Equal Protection Clause, see Davis v. Massachusetts Interscholastic Athletic Ass'n, Inc., 3 Mass. L. Rptr. 375, 1995 WL 808968, at *2 (Mass. Super. Jan. 18, 1995), necessitates a similar finding with regard to the TECCA Plaintiffs here. [See Dkt. 19 at 2]. Yet, as Defendant points out, there are key differences between a TECCA student who is fully enrolled at that institution, despite its virtual status, and a home-school student who "not only remain[s] under the control of the local school district, which must approve a homeschooled student's curriculum," but who also retains the ability to "receive a diploma from their local school district," contingent upon their satisfaction of DESE's "competency requirements and local educational standards, school committee policy, and the approval by the Superintendent of Schools." [Dkt. 20 at 1–2].

When evaluating an equal protection claim as here, "the formula for determining whether individuals or entities are 'similarly situated' for equal protection purposes is not always susceptible to precise demarcation"; nevertheless, "the case law makes clear that the burdens of production and persuasion must be shouldered by the party asserting the equal protection violation … [t]hus, plaintiffs claiming an equal protection violation must first identify and relate *specific instances* where persons *situated similarly in all relevant aspects* were treated differently." Cordi-Allen v. Conlon, 494 F.3d 245, 250–51 (1st Cir. 2007) (internal quotations and citations omitted) (emphasis in original). The myriad differences between TECCA students and home-school students alone make a finding of likely success on this claim difficult to make—and that is to say nothing of the many similarities between TECCA students and charter or private school students, nor of the significant change in circumstances provided by TECCA's recent application to simply join the MIAA as a member school.

Moreover, in the affidavit submitted by MIAA Assistant Executive Director Phil Napolitano alongside Defendant's opposition to the instant motion, Mr. Napolitano details several rationales behind MIAA's rule clarification as relevant to equal protection analysis. These rationales include: assuring adherence to other MIAA rules "governing student eligibility requirements about attendance, academics and behavior" [Dkt. 15-1 at ¶ 14]; MIAA's receipt of complaints from its member schools regarding virtual school waivers and concomitant MIAA rule violations and inequities among member and non-member schools [id. at ¶ 15]; the protection of students at MIAA member-schools "from displacement by outside, non-MIAA players" [id. at ¶ 16]; and the correction of past "inequity to independent charter schools" caused by inconsistent interpretation of MIAA's rules [id. at ¶ 17]. Even if the Court were to find that MIAA was treating similarly situated groups of students differently, it nevertheless finds that

MIAA's stated reasons for its policies at issue and their "rational[] relat[ion] to a legitimate state interest," City of Cleburne, 473 U.S. at 440, to be persuasive.

        *ii.*    *Claim 2: Massachusetts Administrative Procedure Act*

Plaintiffs' second claim seeks a declaratory judgment holding that MIAA failed to comply with the Massachusetts Administrative Procedure Act ("MAPA"), Mass. Gen. Laws ch. 30A, § 1 *et seq.*, in amending Rule 51, and declaring the amended rule unenforceable. The purpose of the MAPA is "to establish a set of minimum standards of fair procedure below which no agency should be allowed to fall and to create uniformity in agency proceedings." Carey v. Commissioner of Corr., 95 N.E.3d 220, 224 (Mass. 2018) (citation omitted).

Massachusetts provides a cause of action for declaratory relief where a state agency practice is "alleged to be in violation of the Constitution of the United States or of the constitution or laws of the commonwealth." Mass. Gen. Laws ch. 231A, § 2. To obtain declaratory relief in a case involving administrative action, a plaintiff must show that "(1) there is an actual controversy; (2) he has standing; (3) necessary parties have been joined; and (4) available administrative remedies have been exhausted." School Comm. of Hudson v. Board of Educ., 863 N.E.2d 22, 32 (Mass. 2007).

Specifically, Plaintiffs allege that MIAA violated the notice and comment requirements of Section 3 of the MAPA. That section requires an agency to "give notice and afford interested persons an opportunity to present data, views, or arguments … [p]rior to the adoption, amendment, or repeal of any regulation." Mass. Gen. Laws ch. 30A, § 3. Its provisions include, *inter alia*, procedures by which an agency must give notice of a proposed regulation to potentially interested persons, requirements for the contents of such notice, and provisions by

11

which the agency may bypass notice and comment requirements in emergency situations. See id. These notice and comment procedures provide "an opportunity for input and debate by the persons affected, and deliberate resolution of issues." Carey, 95 N.E.3d at 224 (citation omitted).

The notice and comment provisions of the MAPA only apply to entities meeting the statute's definition of "agency" or otherwise enumerated by the statute. See Desrosiers v. Governor, 158 N.E.3d 827, 843 n.26 (Mass. 2020). The statute defines "agency" as "any department, board, commission, division or authority of the state government or subdivision of any of the foregoing, or official of the state government, authorized by law to make regulations or to conduct adjudicatory proceedings." Mass. Gen. Laws ch. 30A, § 1(2).

Plaintiffs further allege that MIAA violated the MAPA because its amendment to Rule 51 was arbitrary and capricious. The Supreme Judicial Court of Massachusetts held just weeks ago that, as "a quasi-governmental agency," MIAA is subject to the MAPA's arbitrary and capricious review standard. See Abner A. v. Massachusetts Interscholastic Athletic Ass'n, 192 N.E.3d 1066, 1075 (Mass. 2022) (quoting Scott v. Oklahoma Secondary Sch. Activities Ass'n, 313 P.3d 891, 902 (Okla. 2013)) ("While the athletic association is not a State agency subject to the provisions of the Administrative Procedures Act (APA), it is similar enough in character and in reach that courts should apply the standard of review provided by the APA."). An agency decision "is not arbitrary and capricious unless there is no ground which reasonable persons might deem proper to support it." Garrity v. Conserv. Comm'n, 971 N.E.2d 748, 758 (Mass. 2012) (citation omitted).

For substantially similar reasons as discussed in the analysis of Plaintiffs' equal protection claim above, the Court finds that Plaintiffs' claims under the MAPA fail to meet the requisite standard for likelihood of success on the merits as would be required to issue a

preliminary injunction. Many of the same facts and circumstances that demonstrate TECCA students' likely lack of "similarly situated," see Engquist, 553 U.S. at 602, status to others such as home-school students, and which provide reasons "rationally related to a legitimate state interest," City of Cleburne, 473 U.S. at 440, also support a finding that MIAA's actions at issue here have been reasonably grounded and not "arbitrary and capricious" under the MAPA. Defendant has provided numerous rational explanations for its rule clarifications and system for accommodating non-traditional students. And while, as Defendant acknowledges [see Dkt. 15 at 20], this may seem unfair to Timmy and Jimmy, Plaintiffs are simply not able to meet their burden with regard to likelihood of success on the merits of their claims—at least at this stage of the litigation and in this pre-discovery posture.

### b. Potential for Irreparable Harm

Irreparable harm is "a substantial injury that is not accurately measurable or adequately compensable by money damages." Ross-Simons of Warwick v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996); Hearst Stations Inc. v. Aereo, Inc., 977 F. Supp. 2d 32, 40 (D. Mass. 2013). A plaintiff must show more than a "tenuous or overly speculative forecast of anticipated harm." Ross-Simons, 102 F.3d at 19. Courts consider this factor in conjunction with likelihood of success on the merits, using a "sliding scale … such that the strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown." Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 42–43 (1st Cir. 2010).

Here, the potential for irreparable harm to Plaintiffs is evident, insofar as they have plead facts pertaining to the significance of continued participation in team sports through Jimmy and Timmy's local district schools on these adolescents' respective mental health, access to

opportunities for socialization, and enhancement of important life skills such as leadership, organizational involvement, and physical well-being. In contrast, MIAA does not even address the possibility of irreparable harm to itself [see Dkt. 15 at 10; see also Dkt. 19 at 3], which the Court finds understandable given the seeming ease of continuing a practice the organization has undertaken for years and which only involves approximately 35 students statewide.

Nevertheless, in light of the considerations regarding likelihood of success on the merits discussed above, the mere fact that Plaintiffs' potential for irreparable harm is greater—or even significantly greater—than Defendant's is insufficient to overcome the "particular emphasis," Get In Shape Franchise, Inc., 167 F. Supp. 3d at 198, on that first and most critical prong of the test to be applied to motions seeking preliminary injunction—and the relegation of the latter three prongs to "matters of idle curiosity," id. (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)). Essentially, while the Court is sympathetic to Jimmy and Timmy's desire and the benefits to their personal development to continue participating on MIAA member-school athletic teams, the irreparable harm they will face by virtue of their absences is simply not sufficient to supersede the significance of their likelihood to succeed—or fail—on the ultimate merits of their claims.

    c. **Balance of Hardships**

Like the irreparable harm factor, the Court weighs the balance of hardships factor in light of its findings on the likelihood of success factor. Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600, 612–13 (1st Cir. 1988). "If a strong likelihood of success is demonstrated, then the court should issue the injunction even if the defendant will incur the relatively greater burden." Id. at 613. Conversely, if the plaintiff shows only a "slightly greater

chance of succeeding than failing on the merits," a finding that the balance of hardships weighs in favor of the defendant will defeat the motion for an injunction, as "the court should not force the defendant to suffer prior to a final determination on the allegations." Id.

Accordingly, and in line with the discussion of Plaintiffs' likelihood of success on the merits as discussed above, the Court finds this factor has little significance in the overall analysis of Plaintiffs' motion for preliminary injunction. While Jimmy and Timmy are, at least as alleged and argued, facing considerable hardship by no longer being allowed to participate on their former athletic teams, Defendant, too, has provided several reasonable rationales for its decision to amend the relevant MIAA rules. Some of these reasons, such as complaints from member schools and the need to correct past inequities in rule application, may certainly also cause great hardship to a quasi-governmental organization tasked with managing relationships and coordinating athletic programs between hundreds of member schools. Regardless, as discussed above regarding irreparable harm, these factors are of slight significance in the Court's analysis here.

### d. Public Interest

The public interest factor "requires this Court to inquire whether there are public interests beyond the private interests of the litigants that would be affected by the issuance or denial of injunctive relief." Everett J. Prescott, Inc. v. Ross, 383 F. Supp. 2d 180, 193 (D. Maine 2005) (citing United States v. Zenon, 711 F.2d 476 (1st Cir. 1983)). It is always in the public interest to prevent the violation of a party's constitutional rights. Dorce v. Wolf, 506 F. Supp. 3d 142, 145 (D. Mass. 2020) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

While Plaintiffs' constitutional claims have yet to be litigated in full, per the analysis conducted in resolving this motion, the Court finds they are unable at this stage to prove the requisite likelihood of success. Regarding other factors potentially related to the public interest, Plaintiffs reference the obvious importance of interscholastic athletic involvement in a student's development and educational experiences, and note that "lack of injunctive relief will, instead, diminish the ability of *thousands* of Massachusetts children to obtain the benefits of such athletic participation." [Dkt. 6 at 20] (emphasis added). Yet it is quite unclear how Plaintiffs arrived at this extraordinarily high number, given that they identify only 35 students statewide as potential class members in this litigation. [See Dkt. 4-1 at 13, 17].

Defendant, on the other hand, argues that the MIAA Board of Directors, made up of public school officials including "MIAA school Superintendents, Principals, Athletic Directors and School Committee Members" have "confirmed that the Rule Clarification is in the best interests of MIAA members, that is, the best interests of the Commonwealth's public schools." [Dkt. 15 at 19]. Again, and as above, the Court finds this factor to be not particularly persuasive in light of Plaintiffs' lack of showing sufficient likelihood of success on the merits. However, the very small size of the population affected here, alongside the very real public interest in having a functional, consistent statewide system for youth development activities such as sports, indicates this aspect of the test may well weigh in favor of Defendant.

## IV.  CONCLUSION

A "preliminary injunction cannot survive if the plaintiffs are unlikely to succeed on the merits," and, despite the importance of weighing potential for irreparable harm, "[w]hat matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but

rather the risk of such harm in light of the party's chance of success on the merits.  Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue."  <u>Abner A. v. Massachusetts Interscholastic Athletic Ass'n</u>, 192 N.E.3d 1066, 1074 (Mass. 2022) (internal quotations and citations omitted).

It is this balancing test between risks that is ultimately dispositive as to this motion.  While the Court finds the risk of irreparable harm and the balance of hardships to weigh in favor of Plaintiffs, the tenuousness of the merits of their claims precludes such extraordinary relief as the preliminary injunction sought here.  Defendant has provided several rational, seemingly legitimate state interests underlying its rule clarifications at issue—and while the Court does not opine on the overall merits of Plaintiffs' claims, which of course cannot be evaluated in full absent discovery and continued litigation—it is certainly far from apparent that Plaintiffs are, in fact, sufficiently *likely* to succeed.

Unfortunately, this would seem to mean that adolescents like Jimmy and Timmy will be unable to resume participation on MIAA member-school sports teams, a fact that seems rather unfortunate given the Plaintiffs' statements regarding how important these activities are to the boys' lives and wellness—as well as the overall seeming insignificance of accommodating potentially only about 35 such students seeking waivers statewide.  In light of these circumstances, the Court certainly encourages the parties to make continued attempts at arriving at a compromise of sorts for these students—whether it be through prompt attention to TECCA's application to join MIAA or some other means of resolving this.

For the foregoing reasons, Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. 5] is **DENIED**. The Court will proceed with the establishment of a scheduling order and timetable for discovery.

**SO ORDERED.**

October 11, 2022 /s/ Angel Kelley
ANGEL KELLEY
U.S. DISTRICT JUDGE